*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* JCB.

---

CJB,

           Petitioner-Appellee,

V

JCB,

           Respondent-Appellant.

FOR PUBLICATION
April 15, 2021
9:05 a.m.

No. 349975
Gladwin Circuit Court
Family Division
LC No. 17-009077-PH

---

Before: LETICA, P.J., and K. F. KELLY and REDFORD, JJ.

K. F. KELLY, J.

Respondent appeals as of right the order finding him in criminal contempt for violating a personal protection order (PPO). Respondent was sentenced to serve three days in jail and pay $200 in fines and $600 for court costs and attorney fees. We hold a party must timely challenge a trial court's order denying the motion to terminate a PPO; when a party fails to comply, a review of the validity of the PPO is foreclosed. Additionally, a party may be held in criminal contempt for violating the plain, written conditions delineated on the PPO. Because respondent failed to timely appeal the denial of the motion to terminate the PPO and the trial court found that criminal contempt was proven beyond a reasonable doubt with credible evidence of an assault by respondent upon petitioner, respondent is not entitled to appellate relief. Therefore, finding no errors warranting reversal, we affirm.

## I. BASIC FACTS

On July 11, 2017, petitioner filed a request for an ex parte nondomestic PPO against respondent, his neighbor. To obtain the PPO, petitioner filled out a questionnaire that requested information regarding the name of the respondent, the length of the relationship with that person, any threats by the respondent, any verbal statements and physical actions by the respondent, the frequency of the contacts, the dates of the contacts, and if threatened, the impact of those threats on the petitioner. Petitioner wrote that he had been neighbors with the respondent for nearly 15 years. On June 29-30, 2017, petitioner was working in his yard when respondent verbally harassed him. Specifically, respondent yelled out that petitioner was "worthless" and "couldn't get a job." The verbal harassment occurred three to four times a month for the

last five to six years. Respondent also engaged in name calling; he referred to petitioner as "stupid" and "uneducated." More troubling, respondent threatened to harm petitioner by coming over to petitioner's property to "kick your ass." If petitioner ignored the respondent, the physical threats became more pervasive until petitioner went inside his home. Petitioner asserted that he had called 911 on at least 10 occasions, and law enforcement spoke to respondent. However, any change in respondent's behavior only lasted for several days after the police contact. Petitioner repeatedly asked respondent to leave him alone and stop yelling. With regard to the impact of respondent's conduct, petitioner wrote:

> I feel afraid to go outside of my house. I am afraid of seeing him or him seeing me; I never know if he will try to beat me up. I am always nervous to be in my own yard. I feel very frustrated that he continues to bully me.

On July 11, 2017, the trial court signed the ex parte PPO, citing the repeated patterns of threats, and provided that it was immediately enforceable and in effect until July 17, 2019. A deputy served respondent with the PPO on July 18, 2017.

On August 14, 2017, respondent filed a motion to terminate the PPO, asserting that it was "full of untruths." He claimed that petitioner had been arrested and fined for petitioner's assault upon respondent. It was alleged that petitioner blamed respondent for having to pay the fines related to the assault and initiated the PPO as a form of revenge.

On September 6, 2017, the parties appeared at a hearing on respondent's request to terminate the PPO. The trial court questioned petitioner regarding his contacts with respondent. Petitioner reiterated in his testimony that respondent engaged in repeated name calling and threats and the contacts had been occurring for years. Petitioner admitted that, on one occasion, he was arrested by the police for his interaction with respondent. However, petitioner took measures to avoid respondent. He recently purchased noise-cancelling headphones with a radio feature to prevent him from hearing respondent. Yet, in July 2017, respondent threw eggs at petitioner's lawn mower while petitioner was using his trimmer, and he submitted a picture of his lawn mower to support his testimony.

On the contrary, respondent testified that petitioner was not truthful. He denied that the police had been repeatedly called to address neighborly disputes, but rather, only came to respondent's home to serve the PPO. Respondent claimed that petitioner was a "pervert" who came onto his property and peeked into his windows. He acknowledged that the police were called because of petitioner's assault on respondent, but he could not recall the date of the assault because of back pain and a closed head injury. The assault occurred because respondent tried to collect money that he lent to petitioner. When petitioner did not pay the debt, respondent said he should have known not to "hand it out to a dork that [he would not] get it back from." This caused petitioner to charge at respondent with a pipe. Respondent testified that petitioner was jealous of what respondent had and raised the false allegations against respondent as evidenced by the groundless PPO. Despite referring to petitioner as a "pervert" and "dork," earlier in the hearing, respondent testified that he was college educated and would not engage in name calling. Respondent also claimed that he was poor and would not waste eggs by throwing them at petitioner. In fact, he invited the deputy to come to his home and see that all his eggs were "accounted for."

When asked if he had anything to add, petitioner stated, "Please keep the PPO intact so I can feel a little safer in my yard." The trial court found that it was evident petitioner was afraid of respondent, the

court found that respondent was "pretty egregious," and it did not find respondent to be credible. The trial court denied the request to terminate the PPO.

On September 28, 2018, petitioner filed a motion to show cause for respondent's violation of the PPO. Petitioner submitted a written statement, alleging:

> On Sunday, Sept. 23, 2018, I was mowing a neighbor's yard. I had just met this neighbor & offered to mow his lawn. I was on a riding lawn mower with noise-cancelling head phones on. Out of the corner of my eye I saw a truck pull in & a man get out.

> All of a sudden he walked up to me & punched me on the right cheek, ripped my shirt & scratched me. It was [respondent] – who I have a PPO . . . out against.

> After violating the PPO by punching me, he drove off. I called 911 & reported the violence. They sent an officer out and he took a report, I have enclosed a copy.

> I need to live beside this person & I am so frustrated with his bullying me for years. Things were better after I got the PPO – but now he seems to not respect that order any more[.] Please help me with this situation.

> [Respondent] has called 5 various agencies trying to get me in trouble: township, DEQ, Health Dept, lawyers. Not one of these agencies filed any citations. I would like for him to stop trying to get me in trouble.

After the assault occurred, the police responded to the incident and did record that the sleeve of petitioner's t-shirt was ripped, and he had a scratch under his sleeve. An injury to his face was not recorded as visible. At the time of the assault upon petitioner, he was cutting the grass of David Pillard. Pillard gave a statement to the police that petitioner was cutting his grass when the mower stopped for about ten minutes. He then heard a knock at the door, and respondent arrived at his home to return DVDs. Pillard advised respondent that petitioner was present and he should leave. Pillard looked over at petitioner, and he was on the phone. Thus, Pillard's statement did not indicate that he saw a confrontation or assault between the parties. However, Pillard did report that respondent questioned why petitioner was cutting the lawn instead of respondent. When the police contacted respondent, he denied seeing petitioner at the Pillard home that day and denied any assault.

On October 10, 2018, the hearing on the order to show cause for the PPO violation and to find respondent in criminal contempt was adjourned to appoint counsel to represent respondent in light of the fact that respondent was subject to criminal penalties if found in contempt. On November 6, 2018, a hearing was held on the PPO show cause violation and criminal contempt. Petitioner testified that he was mowing a neighbor's lawn in Gladwin, Michigan, on September 23, 2018, when respondent approached him and grabbed his arm. He testified that respondent then ripped his shirt, scratched his arm, and punched him in the face before walking away to his vehicle, a red Ford Explorer. He acknowledged that he only saw his assailant for a split second and watched the perpetrator walk away. However, petitioner recognized respondent and his vehicle. No one else was outside when these events occurred. Petitioner called the police, and they investigated by conducting interviews, photographing petitioner's ripped shirt and arm scratch, and preparing a report. Petitioner also claimed that respondent called various agencies in an attempt to cause trouble for petitioner, but the agencies did not find any violations or name the

-3-

complainant. Petitioner added that respondent violated the PPO by yelling at him, and he wanted to feel safe in his yard.

Respondent confirmed that he had gone to Pillard's house that day, but he testified that it was only to return items to Pillard. Respondent testified that Pillard told him to wait in the car because, unbeknownst to respondent, petitioner was on the property mowing the lawn. Upon learning that petitioner was present, respondent told Pillard that he had to leave before he ever saw petitioner. Respondent admitted that he drove a burgundy or red Ford Explorer. No other witness was presented to testify whether a confrontation occurred. However, in his statement, Pillard mentioned to the police that respondent questioned why petitioner was mowing the lawn instead of respondent.

At the conclusion of the testimony, the trial court found petitioner's testimony credible and held respondent in criminal contempt for violating the PPO, concluding:

> Basically, this does come down to credibility of the two witnesses, since we only have two witnesses, and they both live on Peace Haven.

> The personal protection order is against [respondent] in this matter. The Court finds the petitioner's testimony credible and finds that since they're in close proximity that he would recognize his vehicle and recognize [respondent] walking away without even seeing his face, because they are neighbors.

> And the Court finds, beyond a reasonable doubt, that [respondent] violated the personal protection order and finds him guilty of contempt of court in this matter.

The written order finding respondent in criminal contempt expressly stated that the proofs were established beyond a reasonable doubt. Although sentencing was adjourned, the trial court warned respondent that the PPO was still in effect, and he faced a penalty of jail time for a violation.

On November 18, 2018, respondent appeared for sentencing. The trial court was advised that respondent was on oxygen and had multiple medical conditions and treating physicians. Counsel for respondent sought leniency, citing his compliance with the PPO for over a year, and the fact that this was his first violation. Petitioner made the following statement before sentencing:

> I'm tired of being bullied. He has done other things that * * * I haven't reported, hollering at me and making gestures. He has even gave me the finger the same day we were in court, when he got home. He was found guilty. I don't know if he will ever learn or quit, but I would feel at peace as long as he's in jail.

The trial court advised respondent of the maximum penalty of 93 days in jail and/or a $500 fine. The trial court sentenced respondent to three days in jail, a $200 fine, and $600 for court costs and attorney fees. In determining the sentence, the court cited the need for punishment in light of "what you have done," the attempt to rehabilitate, and to deter others. From this decision, respondent appeals.

## II. VALIDITY OF THE PPO

Respondent first argues that the trial court erred by denying his motion to terminate the nondomestic ex parte PPO because it was invalid. However, respondent failed to timely challenge this issue, and appellate relief is precluded.

We review a trial court's determination on whether to issue a PPO for an abuse of discretion. *Hayford v Hayford*, 279 Mich App 324, 325; 760 NW2d 503, 505 (2008). "An abuse of discretion occurs when the decision resulted in an outcome falling outside the range of principled outcomes." *Id.* A trial court's findings of fact are reviewed for clear error. *Id.* Additionally, questions of statutory interpretation are reviewed de novo. *Id.*

However, although respondent seeks to challenge the validity of the PPO, the court rules addressing appeals involving PPOs indicate that his request is untimely. Thus, his challenge to the issuance of the PPO fails.

MCR 3.709 governs appeals in PPO cases and provides:

(A) Rules Applicable. Except as provided by this rule, appeals involving personal protection order matters must comply with subchapter 7.200. Appeals involving minor personal protection actions under the Juvenile Code must additionally comply with MCR 3.993.

(B) From Entry of Personal Protection Order.

(1) Either party has an appeal of right from

(a) an order granting or denying a personal protection order after a hearing under subrule 3.705(B)(6) or

(b) the ruling on respondent's first motion to rescind or modify the order if an ex parte order was entered.

(2) Appeals of all other orders are by leave to appeal.

(C) From Finding after Violation Hearing.

(1) The respondent has an appeal of right from a sentence for criminal contempt entered after a contested hearing.

(2) All other appeals concerning violation proceedings are by application for leave.

On July 11, 2017, petitioner applied for the nondomestic ex parte PPO, and the trial court signed the PPO that day, citing the repeated patterns of threats, and provided that the PPO was immediately enforceable and in effect until July 17, 2019. A deputy served respondent with the PPO on July 18, 2017. On August 14, 2017, respondent filed a motion to terminate the PPO, asserting that it was "full of untruths." On September 6, 2017, the parties appeared at a hearing on respondent's request to terminate the PPO. Following the testimony of both parties, the trial court denied respondent's motion to terminate. Consequently, the time for filing respondent's claim of appeal commenced on September 6, 2017, and pursuant to MCR 7.204(A)(1), respondent had 21 days after the denial of the motion to terminate to file

his claim of appeal as of right. However, respondent did not file his claim of appeal until July 29, 2019, after the finding of criminal contempt. Accordingly, we do not have jurisdiction to address the validity of the PPO. Furthermore, the longstanding rule is that "a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy." *United States v Rylander*, 460 US 752, 756; 103 S Ct 1548; 75 L Ed 2d 521 (1983). Consequently, respondent's challenge to the validity of the PPO underlying the criminal contempt is foreclosed.

### III. FINDING OF CRIMINAL CONTEMPT

Respondent contends that there was insufficient evidence to support his conviction of criminal contempt because the evidence did not establish a violation of the PPO. We disagree.

Under MCL 600.2950a(23), a person who fails to comply with a PPO is subject to the criminal contempt powers of the court. The rules of evidence apply to criminal contempt proceedings, and the petitioner has the burden of proving the respondent's guilt of criminal contempt beyond a reasonable doubt. MCR 3.708(H)(3). We review a trial court's decision to hold a party in contempt for an abuse of discretion. *In re Contempt of Auto Club Ins Ass'n*, 243 Mich App 697, 714; 624 NW2d 443 (2000). The nature of the contempt order and whether the contempt statute permitted the sanctions imposed are questions of law that are reviewed de novo. *Id*. When examining the sufficiency of the evidence to support a criminal contempt finding following a bench trial, this Court views the evidence presented in a light most favorable to the prosecution to determine if the elements of the crime were proven beyond a reasonable doubt. *In re Contempt of Henry*, 282 Mich App 656, 677; 765 NW2d 44 (2009). Furthermore, the trial court's factual findings in a contempt proceeding are reviewed for clear error, and we must affirm if there is competent evidence to support them. *In re Kabanuk*, 295 Mich App 252, 256; 813 NW2d 348 (2012). We do not weigh the evidence or the credibility of the witnesses in determining whether there is competent evidence to support the findings. *Id*. Circumstantial evidence and the reasonable inferences arising from that evidence can constitute satisfactory proof of the elements. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

The PPO prohibited respondent from "stalking as defined under MCL 750.411h and MCL 750.411i." An ex parte PPO can only be issued when "specific facts" show "that immediate and irreparable injury, loss, or damage will result from the delay required to effectuate notice or that the notice will precipitate adverse action before a personal protection order can be issued." MCL 600.2950a(12). Additionally, MCR 3.705(A)(2) states that if the court grants an ex parte order, "the court must state in writing the specific reasons for issuance of the order."

MCL 750.411h(1)(d) defines stalking as

a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested.

" 'Course of conduct' means a pattern of conduct composed of a series of 2 or more separate noncontinuous acts evidencing a continuity of purpose." MCL 750.411h(1)(a). MCL 750.411h(1)(c) provides:

-6-

"Harassment" means conduct directed toward a victim that includes, but is not limited to, repeated or continuing unconsented contact that would cause a reasonable individual to suffer emotional distress and that actually causes the victim to suffer emotional distress. Harassment does not include constitutionally protected activity or conduct that serves a legitimate purpose.

Emotional distress is defined to mean "significant mental suffering or distress that may, but does not necessarily, require medical or other professional treatment or counseling." MCL 750.411h(1)(b). And MCL 750.411h(1)(e) states:

"Unconsented contact" means any contact with another individual that is initiated or continued without that individual's consent or in disregard of that individual's expressed desire that the contact be avoided or discontinued. Unconsented contact includes, but is not limited to, any of the following:

(*i*) Following or appearing within the sight of that individual.

(*ii*) Approaching or confronting that individual in a public place or on private property.

(*iii*) Appearing at that individual's workplace or residence.

(*iv*) Entering onto or remaining on property owned, leased, or occupied by that individual.

(*v*) Contacting that individual by telephone.

(*vi*) Sending mail or electronic communications to that individual.

(*vii*) Placing an object on, or delivering an object to, property owned, leased, or occupied by that individual.

Petitioner's questionnaire in support of his PPO petition stated that he had been threatened and insulted by respondent "3-4 times a month for 5-6 years." He indicated that respondent's insults were always focused on his intelligence and worth as a person and that his threats involved physical harm to petitioner. Petitioner indicated that the recurrence of respondent's threats and yelling caused him to seek refuge in his home. Thus, to obtain the PPO, petitioner alleged a pattern or course of improper conduct by respondent, and respondent cannot relitigate the validity of the PPO in his challenge to the criminal contempt. *Rylander*, 460 US at 756.

Nonetheless, respondent submits that to present sufficient evidence to support criminal contempt premised on a violation of the PPO, a petitioner must demonstrate *again* to the court a course of conduct and harassment causing emotional distress.[1] Because petitioner alleged "only the one instance of assault

---

[1] Respondent's brief on appeal states, "In order to establish a violation for non-domestic stalking, the Petitioner was required to establish stalking by Respondent beyond a reasonable doubt."

-7-

throughout all the hearings," respondent claimed that there was insufficient evidence to support the criminal contempt. We disagree.

In the present case, petitioner filed a petition seeking a nondomestic ex parte PPO. After a written submission and hearing, the trial court issued the PPO. In light of respondent's request to terminate the PPO, a second hearing was held during which witnesses were sworn and evidence was presented. At the conclusion of this hearing, the trial court found that respondent's testimony that he did not threaten or harass petitioner was simply not credible. Indeed, respondent's contention that he did not engage in juvenile behavior such as name calling was belied by his testimonial references to petitioner as a "pervert" and "dork."

After petitioner was assaulted by respondent while mowing a neighbor's lawn, he requested a show cause order seeking to hold defendant in criminal contempt for the violation of the PPO. Contrary to respondent's assertion, petitioner was not required to demonstrate anew the requirements necessary to obtain a PPO. Moreover, petitioner need not allow repeated assaults to occur to obtain relief. Instead, when a PPO is premised on the stalking statute, MCL 750.411h, a course or pattern of conduct is examined, and therefore, "all relevant present and past incidents arising between the parties" is pertinent for consideration. See *PF v JF*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 351461), slip op at 6-7. Furthermore, the plain language of the PPO itself instructs on the next course of action. The PPO expressly stated that respondent was prohibited from stalking as defined in "MCL 750.411h and MCL 750.411l" and this conduct includes but is not limited to:

following or appearing within sight of the petitioner.

appearing at the workplace or the residence of the petitioner.

approaching or confronting the petitioner in a public place or on private property.

entering onto or remaining on property owned, leased, or occupied by the petitioner.

sending mail or other communications to the petitioner.

contacting the petitioner by telephone.

placing an object on or delivering an object to property owned, leased, or occupied by the petitioner.

threatening to kill or physically injure the petitioner.

purchasing or possessing a firearm.

6. Violation of this order subjects the respondent to immediate arrest and to the civil and criminal contempt powers of the court. If found guilty, respondent shall be imprisoned for not more than 93 days and may be fined not more than $500.00.

At the show cause hearing, petitioner testified that he was mowing the lawn of neighbor Pillard when he was suddenly punched and scratched by respondent and his shirt was torn. Although the assault occurred very fast, petitioner nonetheless recognized respondent as the perpetrator and saw respondent

depart in his red Ford Explorer. This conduct violated the court's PPO because it fell within the prohibition against "approaching or confronting the petitioner in a public place or on private property."[2] The issuance of the PPO plainly apprised respondent that if he committed a listed prohibited act, he was subject to immediate arrest and civil and criminal contempt. Respondent's contention that petitioner had to demonstrate a pattern of action before seeking to hold respondent in criminal contempt is not supported by the language of the order.

We reject respondent's contention that the punching incident did not occur. The trial court was presented with two diametrically opposed versions of event. Following the testimony, the trial court found that the assault occurred by respondent upon petitioner. As the reviewing court, we do not weigh the evidence or credibility of witnesses. *In re Kabanuk*, 295 Mich App at 256. Evidence was presented that petitioner was harassed and attacked by respondent, and the trial court found this evidence to be credible. The conduct occurred despite the trial court order precluding its occurrence. We conclude that the evidence was sufficient to permit a rational trier of fact to find beyond a reasonable doubt that respondent violated the PPO and was properly found in criminal contempt.

## IV. TRIAL COURT'S FINDINGS

Respondent contends that the trial court provided insufficient findings of fact and law, requiring reversal of his conviction. We disagree.

The proper interpretation and application of a court rule presents a question of law reviewed de novo. *People v Cole*, 491 Mich 324, 330; 817 NW2d 497 (2012). We review a trial court's findings of fact for clear error. *Hayford*, 279 Mich App at 325. An issue of statutory construction is also reviewed de novo. *Id*.

MCR 3.708(H)(4) requires a trial court at a PPO violation hearing to "find the facts specially, state separately its conclusions of law, and direct entry of the appropriate judgment. The court must state its findings and conclusions on the record or in a written opinion made a part of the record." The requirements of MCR 3.708(H)(4) are also addressed in MCR 2.517. MCR 2.517 is satisfied when "it appears that the trial court was aware of the issues in the case and correctly applied the law, and where appellate review would not be facilitated by requiring further explanation." *Triple E Produce Corp v Mastronardi Produce, Ltd*, 209 Mich App 165, 176; 530 NW2d 772 (1995).

---

[2] We note that the PPO also provided that respondent was prohibited from "following or appearing within sight of the petitioner." We question the validity of the breadth and scope of this prohibition particularly in light of the facts of this case. Petitioner and respondent are neighbors, and under these terms, respondent could be deemed in violation by merely exiting his home and being viewed by petitioner. However, petitioner did not raise this ground as a basis for the violation of the PPO and criminal contempt. Moreover, petitioner did not assert that respondent's sole appearance was problematic, but rather, it was respondent's presence, yelling, verbal abuse, and threats of violence. We cannot address the constitutional breadth of the "appearing within sight" of the petitioner provision because our resolution would be premised on a hypothetical when our focus must be on the specifics of the case at hand. *People v Lockett*, 295 Mich App 165, 176; 814 NW2d 295 (2012). Nonetheless, we caution against a literal application of the "appearing within sight" provision.

As noted, the trial court made the following findings on the record:

> Basically, this does come down to credibility of the two witnesses, since we only have two witnesses, and they both live on Peace Haven.

> The personal protection order is against [respondent] in this matter. The Court finds the petitioner's testimony credible and finds that since they're in close proximity that he would recognize his vehicle and recognize [respondent] walking away without even seeing his face, because they are neighbors.

> And the Court finds, beyond a reasonable doubt, that [respondent] violated the personal protection order and finds him guilty of contempt of court in this matter.

A review of the trial court's decision reveals that it was aware of the issues, correctly applied the terms of the PPO to the facts, and found respondent in criminal contempt for violating the PPO. A remand for further explanation would not aid our appellate review. *Triple E Produce Corp*, 209 Mich App at 176. Although respondent correctly notes that the trial court could have provided more details regarding the basis for its decision, it complied with the provisions of MCR 3.708(H)(4). The trial court found that the punching incident occurred and found that the incident violated the terms of the PPO. As discussed above, this was a correct application of the law. Therefore, the trial court did not err in providing its findings of fact and law.

## V. CUMULATIVE EFFECT OF ERRORS

Finally, we reject respondent's argument that the cumulative effect of several errors deprived him of due process. Cumulative error only warrants reversal when several errors combine to undermine confidence in the reliability of a verdict. *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007). Because no errors have been identified, respondent is not entitled to appellate relief.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Anica Letica
/s/ James Robert Redford