*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* JLS.

---

AKS,

        Petitioner-Appellee,

v

JLS,

        Respondent-Appellant.

UNPUBLISHED
July 8, 2021

No. 354074
St. Clair Circuit Court
Family Division
LC No. 18-002840-PP

---

Before: TUKEL, P.J., and SERVITTO and RICK, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order sentencing him to serve 30 days in jail for violating a personal protection order (PPO). We agree that the trial court erred by holding respondent in contempt for violating the PPO, but we disagree with respondent's argument that the trial judge was biased against him. Thus, we vacate the trial judge's order holding respondent in contempt for violating the PPO and remand for proceedings consistent with this opinion.

## I. UNDERLYING FACTS

The trial court granted petitioner an ex parte PPO against respondent on November 28, 2018.[1] Petitioner and respondent divorced in December 2019. In relevant part, the judgment of divorce specified that respondent was required to make a payment to petitioner for petitioner's interest in their shared personal and real property. The judgment of divorce additionally provided that petitioner was required to vacate the marital home (the home) no later than 60 days after respondent paid petitioner. Finally, the judgment of divorce stated that payment in full was

---

[1] Although the PPO was originally set to expire after one year, the trial court subsequently extended the expiration date to May 28, 2020.

tendered on December 6, 2019, and, therefore, that petitioner was required to vacate the marital home "on or before February 6, 2020."[2]

On March 16, 2020, petitioner filed a motion for an order to show cause for alleged violations of the PPO. The trial court held a hearing on petitioner's motion to show cause, at which both respondent and petitioner testified. Both parties' testimony focused on respondent's alleged behavior on three occasions: (1) February 5, 2020, when respondent arrived at the home in which petitioner still resided; (2) February 14, 2020, when respondent, during a parenting time exchange, allegedly held up to his vehicle's window a personal photograph that belonged to petitioner; and (3) March 11, 2020, when respondent allegedly yelled at one of petitioner's children—of whom respondent was not also a parent—after a parenting time exchange. At the conclusion of the hearing, the trial court found that each occasion constituted an individual violation of the PPO.

## II. VIOLATION OF THE PPO

Respondent argues the trial court erred by finding that he violated the PPO because no competent evidence supported the trial court's findings. We agree.

## A. STANDARD OF REVIEW

This Court "review[s] a trial court's findings in a contempt proceeding for clear error, and such findings must be affirmed if there is competent evidence to support them." *In re Kabanuk,* 295 Mich App 252, 256; 813 NW2d 348 (2012). A trial court's finding "is clearly erroneous when no evidence supports the finding or, on the entire record, this Court is left with a definite and firm conviction that a mistake has been made." *King v Mich State Police Dep't*, 303 Mich App 162, 185; 841 NW2d 914 (2013). Moreover, this Court "may not weigh the evidence or the credibility of the witnesses in determining whether there is competent evidence to support the findings." *In re Kabanuk*, 295 Mich App at 256. Furthermore, "[t]his Court reviews a trial court's issuance of an order of contempt for an abuse of discretion." *Id*. Although "[a]n abuse of discretion occurs when the decision resulted in an outcome falling outside the range of principled outcomes," *Hayford v Hayford*, 279 Mich App 324, 325; 760 NW2d 503 (2008), "[a]n error of law necessarily constitutes an abuse of discretion," *Denton v Dep't of Treasury*, 317 Mich App 303, 314; 894 NW2d 694 (2016).

## B. ANALYSIS

### 1. STANDARDS APPLICABLE TO VIOLATIONS OF A PPO

"Violation of a PPO may result in a finding of criminal contempt and subject a respondent to up to 93 days in jail and a fine of up to $500." In re *Kabanuk*, 295 Mich App at 256. MCR 3.708 governs contempt proceedings "resulting from the violation of a [PPO] . . . ." *DeGeorge v Warheit*, 276 Mich App 587, 597; 741 NW2d 384 (2007). "To establish criminal contempt, the

---

[2] The judgment of divorce contained a scrivener's error because the parties agree that February 4, not February 6, is 60 days after December 6. See MCR 1.108 (regarding computation of time). This scrivener's error is directly related to one of the alleged PPO violations in this case.

charged party must have willfully disregarded or willfully disobeyed a court order." *Ferranti v Electrical Resources Co*, 330 Mich App 439, 445; 948 NW2d 596 (2019). "The term 'willful' is defined in Black's Law Dictionary as describing an action that is '[v]oluntary and intentional, but not necessarily malicious.' " *People v Fennell*, 260 Mich App 261, 267; 677 NW2d 66 (2004). "The petitioner or the prosecuting attorney has the burden of proving the respondent's guilt of criminal contempt beyond a reasonable doubt . . . ." MCR 3.708(H)(3). See also *Brandt v Brandt*, 250 Mich App 68, 76; 645 NW2d 327 (2002) (citing MCR 3.708(H) for the proposition that "there must be proof beyond a reasonable doubt to find the respondent guilty" in a contempt proceeding).

In this case, the PPO prohibited respondent from engaging in various behaviors, including (1) entering onto property where petitioner lived, and (2) engaging in stalking, as defined by MCL 750.411h and MCL 750.411i. The PPO explained, in relevant part, that stalking included "entering onto or remaining on property owned, leased, or occupied by petitioner." Although the PPO provided a nonexhaustive list of stalking behaviors, it did not provide the actual statutory definition of stalking. MCL 750.411h(1)(d) defines stalking as

> a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested. [*Berryman v Mackey*, 327 Mich App 711, 719; 935 NW2d 94 (2019), quoting MCL 750.411h(1)(d).]

MCL 750.411h(1)(a) further defines "course of conduct" as "a pattern of conduct composed of a series of 2 or more separate noncontinuous acts evidencing a continuity of purpose." *Berryman*, 327 Mich App at 719, quoting MCL 750.411h(1)(a). MCL 750.411i, which defines the offense of "aggravated stalking," has the same definitions. MCL 750.411i(1)(a) and (d).

### 2. APPLICATION TO THIS CASE

In finding that respondent violated the PPO as a result of his February 5, 2020, February 14, 2020, and March 11, 2020 actions, the trial court reasoned that each incident individually constituted stalking behavior as prohibited by the PPO. The trial court could have found that these incidents, taken together, constituted a "course of conduct" such that respondent's behavior came within the definition of stalking in MCL 700.411(h). Individual actions, however, cannot constitute a "course of conduct" because an individual action necessarily cannot constitute "a pattern of conduct composed of a series of 2 or more separate noncontinuous acts evidencing a continuity of purpose." See MCL 750.411h(1)(a).

Indeed, respondent's conduct on all of the occasions combined arguably could have evidenced a continuity of purpose such that respondent violated the PPO by engaging in stalking behavior. But the trial court found that each incident constituted a *separate* violation of the PPO, demonstrated by the trial court's statement that it found respondent guilty of three PPO violations. A single act cannot constitute stalking; rather, two or more actions must occur for behavior to qualify as stalking. As such, the trial court committed an error of law, which by definition constitutes an abuse of discretion. See *Denton*, 317 Mich App at 314.

Nevertheless, the trial court's finding that respondent willfully violated the PPO on February 5, 2020, by violating a court order rather than by engaging in "stalking," presents a closer call. On that date, respondent entered onto property on which petitioner lived, which the PPO specifically prohibited. Although the trial court referred to petitioner as occupying rather than living in the home, there is no real dispute that petitioner had not yet moved out of the home on the day in question. Petitioner testified that she arrived home on February 5, 2020, and found respondent there. She still lived in the home on that date and believed she was not required to vacate the property until February 6, 2020, the date specifically listed in the judgment of divorce. Respondent testified that he went to the home on February 5, 2020. Respondent affirmed that he knew petitioner had an active PPO against him as of that date and that the PPO prohibited him from entering onto property where petitioner lived. Although the judgment of divorce contained contradictory provisions regarding the date by which petitioner had to vacate the home, see n 2 of this opinion, the trial court noted that the judgment of divorce specifically stated that petitioner could remain in the home until February 6, 2020, and that respondent's own counsel drafted the judgment. The trial court found that respondent knew or should have known that petitioner had the right to live in the home on February 5, 2020.

As stated earlier, "[t]o establish criminal contempt, the charged party must have willfully disregarded or willfully disobeyed a court order," *Ferranti*, 330 Mich App at 445, and "[t]he term 'willful' is defined in Black's Law Dictionary as describing an action that is '[v]oluntary and intentional, but not necessarily malicious,' " *Fennell*, 260 Mich App at 267. Consequently, to be valid, the trial court's order holding respondent in contempt for violating the PPO by appearing at the house on February 5, 2020, required facts establishing that respondent willfully violated the PPO.

Although respondent testified that he believed he had the right to enter the home on the date in question and denied knowing that petitioner still lived there, the trial court explicitly stated that it found petitioner's testimony more credible than respondent's testimony. This Court "may not weigh the evidence or the credibility of the witnesses in determining whether there is competent evidence to support the findings." *In re Kabanuk*, 295 Mich App at 256. Moreover, respondent's argument that the trial court erred by basing its findings solely on petitioner's testimony is without merit. See *People v DeLeon*, 317 Mich App 714, 719; 895 NW2d 577 (2016) ("[A] victim's testimony alone can provide sufficient evidence to support a conviction."). Furthermore, "it is already well established that ambiguous [contractual] language should be construed against the drafter." *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 62-63; 664 NW2d 776 (2003). Consequently, the trial court did not err by construing the conflicting dates in the judgment of divorce against respondent. See *id*.

### 3. THE TRIAL COURT'S RULING REGARDING MENS REA

These findings, however, do not establish that respondent possessed the requisite mens rea for a finding of criminal contempt. On the issue of respondent's mens rea when he arrived at the home on February 5, the trial court concluded that respondent "knew or should have known" that petitioner still had a right to occupy the home on that date. But as stated earlier, "[t]o establish criminal contempt, the charged party must have willfully disregarded or willfully disobeyed a court order," *Ferranti*, 330 Mich App at 445. Consequently, to be valid, the trial court's order holding

respondent in contempt for violating the PPO by appearing at the house on February 5, 2020, required facts establishing that respondent willfully violated the PPO.

The United States Supreme Court has observed that "As a general matter, when used in the criminal context, a 'willful act is one undertaken with a 'bad purpose.' In other words, in order to establish a 'willful' violation of a statute, 'the Government must prove that the defendant acted with knowledge that his conduct was unlawful.' " *Bryan v United States*, 524 US 184, 191-192; 118 S Ct 1939, 1945; 141 L Ed 2d 197 (1998) (citations omitted). Even more generally, however, the Supreme Court also has observed that "the word 'willfully' is sometimes said to be 'a word of many meanings' whose construction is often dependent on the context in which it appears." *Id*. at 191. And this Court also has noted as a general matter that the appropriate mens rea for a finding of criminal contempt is that respondent willfully violated the PPO, not that he knew or should have known that his conduct violated the PPO, which the Court described as "an action that is '[v]oluntary and intentional, but not necessarily malicious,' " *Fennell*, 260 Mich App at 267.

We need not develop the full range of possible "wilfull" conduct in the PPO context to resolve this case, however, because by its ruling that defendant could be found guilty of violating the statute through conduct which he "should have known" violated the PPO, the trial court lessened plaintiff's burden. As this Court have recently held, the "should have known standard" is easier to establish than is a standard encompassing actual knowledge. See *Ahmed v Tokio Marine America Insurance Company*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 352418); slip op at 12-13 (explaining that the "knew or should have known" standard may be met even if an individual had "no reason to know" a fact, because the standard imposes some duty of inquiry as to lawfulness by the actor). The "should have known" standard used by the trial court also encompasses situations in which an individual erroneously, but in good faith, was unaware that his or her conduct violated a PPO. See *id*. at ___; slip op at 14. As such, the trial court erred, and it did so in a manner which necessarily was prejudicial to respondent, by lowering the standard for a finding of a violation of the PPO.

The record does not support a finding that respondent willfully violated the PPO when he arrived at the home on February 5. Indeed, even if we construe the facts of this case as establishing that respondent's presence at the house on February 5, 2020 violated the PPO, the trial court failed to make any factual findings establishing that he did so willfully. While the trial court did state that it found petitioner's testimony more credible than respondent's testimony, that finding does not establish whether respondent voluntarily and intentionally violated the PPO by appearing at the house on February 5. Crucially, in finding petitioner's testimony more credible than the testimony of respondent, the trial court did not state that respondent's testimony lacked all credibility; rather, the trial court merely stated that respondent was less credible than petitioner. As such, based on the facts before us, the record does not establish that respondent willfully, meaning voluntarily and intentionally, violated the PPO on February 5. Respondent testified that he believed petitioner was required to vacate the house by February 4, 2020, and that she would be gone by the time he arrived the following day. The trial court determined that respondent's interpretation of the judgment of divorce was incorrect, but it stopped short of concluding that respondent *knew* his interpretation was incorrect; indeed, by applying a "knew or should have known" standard, the trial court may well have concluded, erroneously, that even though defendant's interpretation of the judgment was incorrect he nevertheless was guilty because he should have known otherwise. See *id.* Thus, while the record supports the trial court's finding

-5-

that respondent violated the PPO by coming to the home, it does not support a finding that he had the requisite mens rea by willfully violating it. Consequently, the trial court clearly erred by holding respondent in criminal contempt for violating the PPO by appearing at the home on February 5, 2020.

## 4. THE TRIAL COURT'S EVIDENTIARY RULINGS

Finally, it is worth noting that respondent claims the trial court refused to admit "relevant evidence such as police reports and other documentation showing that the allegations of [petitioner] were unsubstantiated." But respondent fails to explain how such evidence would have demonstrated that petitioner's allegations were unsubstantiated, and does not specify to which particular items of evidence he refers. Consequently, the argument is abandoned. See *Cheesman v Williams*, 311 Mich App 147, 161; 874 NW2d 385 (2015) ("An appellant may not merely announce a position then leave it to this Court to discover and rationalize the basis for the appellant's claims; nor may an appellant give an issue only cursory treatment with little or no citation of authority.").

Furthermore, even if the argument was not abandoned, respondent would not be entitled to relief on this issue. The trial court declined to admit a police report describing the February 5, 2020 incident. But the decision to admit or exclude evidence is within the trial court's discretion, *Edry v Adelman*, 486 Mich 634, 639; 786 NW2d 567 (2010), and respondent has not offered any argument regarding how the trial court's decision to exclude this police report constituted an abuse of discretion. See MRE 803(8) (providing hearsay exception for matters observed or conducted by public offices or agencies, but "excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel.").

It is unclear what other documentary evidence respondent claims the trial court "refused to admit." The only other evidence respondent offered was the relevant section of the judgment of divorce; the check compensating petitioner for her interest in the home; and the photographs a deputy took of the home on February 5, 2020. The trial court admitted the first two items of evidence. As to the photographs, the trial court eventually admitted them for the purpose of bolstering respondent's credibility. We thus fail to see how respondent could have been prejudiced by the trial court's ruling in this regard.

## III. JUDICIAL BIAS

Respondent next argues that he is entitled to a new show-cause hearing with a different judge because the record demonstrates the trial court exhibited bias against him. We decline to address this issue on the merits because it is unpreserved and, therefore, waived.

To preserve a claim of judicial bias, a respondent must make a motion in the trial court to disqualify the judge. See *In re Contempt of Henry*, 282 Mich App 656, 679; 765 NW2d 44 (2009) ("Because appellant moved to disqualify the judge in the trial court, the issue is preserved for appellate review."). Indeed, a motion to disqualify a trial judge "must be filed within 14 days of the discovery of the grounds for disqualification" or be considered untimely. MCR 2.003(D)(1)(a). If a motion for judicial disqualification is untimely, however, it nonetheless "may be granted for

good cause shown." MCR 2.003(D)(1)(d). Finally, all motions to disqualify a judge must be accompanied by an affidavit. MCR 2.003(D)(2).

Respondent failed to file a motion to disqualify the trial judge. Furthermore, respondent also failed to submit an affidavit with his brief on appeal and to establish—or even address—the issue of good cause for his failure to timely file a motion to disqualify the trial judge. Thus, the issue is unpreserved. See *In re Contempt of Henry*, 282 Mich App at 679; MCR 2.003(D).

As a general rule, "a failure to timely raise an issue waives review of that issue on appeal." *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008) (quotation marks and citation omitted). But this Court has discretion to "overlook preservation requirements if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Smith v Foerster-Bolser Constr, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006) (citation omitted). Indeed, this Court recently reiterated that unpreserved issues are generally waived and that we have discretion regarding whether to review them. *In re Murray*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 349068); slip op at 3-4.

We decline to exercise our discretion to review respondent's unpreserved issue in this case. The court rules clearly outline the procedure to disqualify a trial court judge and respondent wholly failed to comply with the rules. Furthermore, judges are presumed to be impartial, *Swain v Morse*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 346850); slip op at 14, lv pending, and respondent's arguments of judicial bias are largely if not exclusively premised on the trial court's rulings. But "judicial rulings, in and of themselves, almost never constitute a valid basis for a motion alleging bias, unless the judicial opinion displays a deep-seated favoritism or antagonism that would make fair judgment impossible and overcomes a heavy presumption of judicial impartiality." *TT v KL*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 351531); slip op at 9, lv pending (citations and quotation marks omitted). Consequently, we decline to exercise our discretion to review respondent's claim of judicial bias and we consider the issue waived. See *In re Murray*, ___ Mich App at ___; slip op at 3-4; *Smith*, 269 Mich App at 427.

## IV. CONCLUSION

For the reasons stated in this opinion, the trial court's order holding respondent in contempt for violating the PPO is vacated and we remand this case to the trial court for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Jonathan Tukel
/s/ Deborah A. Servitto
/s/ Michelle M. Rick