*In re* KABANUK

Docket No. 301536. Submitted January 11, 2012, at Detroit. Decided
    January 19, 2012, at 9:05 a.m. Leave to appeal denied, 492 Mich 854.

Mary Nordstrom obtained a personal protection order (PPO) that
    prohibited Dawn M. Kabanuk from approaching or confronting
    her in a public place. Both Kabanuk and Nordstrom were at the
    Oakland County courthouse for another matter when they got into
    an altercation. The Oakland Circuit Court, Cheryl A. Matthews, J.,
    found Kabanuk guilty of criminal contempt of court for violating
    the PPO. Kabanuk appealed.

The Court of Appeals *held*:

1. The discussion in *People v Freeman*, 240 Mich App 235
(2000), concerning the possible misuse of a PPO as a sword rather
than a shield was dictum, but in any event, *Freeman* did not shift
the focus onto the behavior of the person holding the PPO. The
holder of a PPO is under no obligation to act in a certain way.
Rather, the court must look only at the behavior of the individual
against whom the PPO is held. Accordingly, Nordstrom's conduct
was not relevant in evaluating whether Kabanuk violated the
PPO. The PPO prohibited Kabanuk from approaching or confront-
ing Nordstrom in a public place. There was competent evidence to
find that Kabanuk violated the PPO by lunging toward Nordstrom
with her finger pointed and verbally assaulting her. Thus, there
was sufficient evidence for the trial court to find beyond a
reasonable doubt that Kabanuk violated the PPO. And Kabanuk's
trial counsel was not ineffective for failing to raise the *Freeman*
issue. Her counsel was not required to raise a meritless defense.

2. Under MRE 404(b)(1), evidence of other crimes, wrongs, or
acts is not admissible to prove the character of a person in order to
show action in conformity therewith. It may, however, be admis-
sible for other purposes. The rule applies to witnesses as well as
criminal defendants. In this case, the court found that because
Kabanuk's husband had been disruptive during previous proceed-
ings, he was likely disruptive during the incident at issue, and thus
was lying about the circumstances of the incident. Although
violative of MRE 404(b)(1), the trial court's use of the prior acts
evidence did not provide a basis for reversal because the use of the

prior acts evidence was not outcome determinative given that there was overwhelming evidence that Kabanuk violated the PPO by lunging at Nordstrom with her finger pointed while yelling.

Affirmed.

1. CONTEMPT — CRIMINAL CONTEMPT — VIOLATIONS OF PERSONAL PROTECTION ORDERS.

The holder of a personal protection order is under no obligation to act in a certain way; rather, when analyzing whether an individual is guilty of criminal contempt for violating a personal protection order, the court must look only at the behavior of that individual against whom the personal protection order is held.

2. EVIDENCE — PRIOR ACTS — WITNESSES.

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith; it may, however, be admissible for other purposes; the rule applies to witnesses as well as criminal defendants (MRE 404[b][1]).

*Jessica R. Cooper*, Prosecuting Attorney, and *Thomas R. Grden*, Assistant Prosecuting Attorney, for the people.

*Charles P. Reisman* for Dawn M. Kabanuk.

Before: JANSEN, P.J., and WILDER and K. F. KELLY, JJ.

K. F. KELLY, J. Respondent Dawn Marie Kabanuk appeals as of right following her bench trial conviction for criminal contempt after violating a personal protection order (PPO), MCL 600.2950a(23). She was sentenced to 14 days in jail. Because the behavior of a PPO respondent is the only relevant consideration in a contempt proceeding, we affirm.

### I. BASIC FACTS

The matter arises out of contentious family relations regarding the custody of Dawn's 14-year-old son. Dawn

is married to Kenneth David Kabanuk who, along with Dawn, was found in criminal contempt of court following their joint bench trial.[1] The two were charged with violating PPOs that had been issued on December 17, 2009, in favor of Mary Nordstrom. Mary is married to Dawn's brother, Ronald Nordstrom. Ronald was granted guardianship over Dawn's son as a result of neglect and guardianship proceedings. Kenneth is not the boy's father, but is admittedly involved in all of the proceedings affecting his wife. The trial court judge acknowledged her familiarity with the parties and was aware that PPOs had been "flying back and forth" between the parties for quite some time.

On the day in question, Dawn and Kenneth were in court for a show-cause hearing against Ronald. Dawn and her ex-husband, Kurt Traskos, claimed that Ronald was in violation of a visitation order and had wrongfully denied visitation. Mary went to the courthouse that day with a dual purpose: she wanted to be there to support her husband and also wanted her sister, Jaya Wilson, to serve Kenneth with additional court papers on behalf of Patricia Nordstrom.[2] Both Mary and Jaya testified that they saw Dawn and Kenneth on the main floor of the court building, just after passing through security. According to Jaya, she approached Kenneth with the papers, but he refused service; she allowed the papers to drop at his feet. Mary and Jaya were later in the hall outside of the judge's courtroom where a fair number of other people had gathered for motion day. Mary and Jaya testified that as they approached the judge's courtroom, they could hear and see Kenneth speaking

---

[1] Kenneth has also appealed from his conviction (*In re Kenneth David Kabanuk*, Docket No. 301537). The cases were submitted together for resolution.

[2] Patricia Nordstrom is the mother of Dawn and Ronald and is Mary's mother-in-law.

very loudly with a woman. Dawn was beside him. Both testified that when Kenneth caught sight of Mary, he called her a "f\*\*\*ing bitch" and screamed that he could not believe she was doing this to them after they had reached a settlement. Mary testified that he used profanity against her at least 10 times. According to Mary, she began to look around the hall for a deputy, and the woman to whom Kenneth was speaking cautioned him to settle down or she would go into the courtroom and summon a deputy. Kenneth persisted in his verbal assault and the woman disappeared into the courtroom. Mary testified that Dawn lunged forward, pointing her finger at Mary and stated, "I have one thing to say to you, you're a f\*\*\*ing bitch and I hate you." The judge's law clerk, Laura McLane, testified that she heard the commotion outside of the courtroom, and an attorney reported that deputies were needed in the hallway. According to McLane, she called for the deputies and then went out into the hallway, hoping to defuse the situation, where she saw Kenneth yelling at Mary. McLane testified that she told everyone that deputies had been summoned and she suggested that Kenneth "take a walk" and pointed down the hallway.

The testimony of Dawn and Kenneth was in stark contrast to that of Mary, Jaya, and McLane. Dawn and Kenneth testified that at no time did they approach, confront, or use profanity against Mary. Rather, according to their testimony it was Mary who approached the two of them in the hallway, told them they were in violation of the PPO, and threatened to have them arrested; Kenneth merely told Mary to stop talking to them and to leave them alone. Kenneth further testified that he reminded Mary that she was in violation of a PPO they had against her and that when McLane came out into the hall and suggested that Kenneth "take a walk," they took her advice and left.

The trial court held both Dawn and Kenneth in criminal contempt of court, finding that they violated the PPOs to the extent that the PPOs prohibited them from approaching or confronting Mary in a public place. Dawn now appeals as of right.

## II. SUFFICIENCY OF THE EVIDENCE

Dawn argues that there was insufficient evidence to support the trial court's finding that she violated the PPO given that Mary used the PPO as a "sword rather than a shield." We disagree.

We review a trial court's findings in a contempt proceeding for clear error, and such findings must be affirmed if there is competent evidence to support them. *In re Contempt of Henry*, 282 Mich App 656, 668; 765 NW2d 44 (2009). We may not weigh the evidence or the credibility of the witnesses in determining whether there is competent evidence to support the findings. *Id.* This Court reviews a trial court's issuance of an order of contempt for an abuse of discretion. *Id.* at 671.

Violation of a PPO may result in a finding of criminal contempt and subject a respondent to up to 93 days in jail and a fine of up to $500. MCL 600.2950a(23); MCR 3.708(H)(5)(a). The PPO at issue here prohibited Dawn from approaching or confronting Mary in a public place. There was competent evidence to find that Dawn violated the PPO by approaching or confronting Mary at the courthouse, a public place. Dawn approached or confronted Mary by lunging toward Mary and saying, "I have one thing to say to you, you're a f***ing bitch and I hate you." Although the testimony of Dawn and Kenneth contradicted the testimony of Mary and Jaya, we are not at liberty to weigh the evidence or the credibility of the witnesses in determining whether

there is competent evidence to support the findings. *Henry*, 282 Mich App at 668.

Respondent relies on *People v Freeman*, 240 Mich App 235, 237 n 1; 612 NW2d 824 (2000), for the proposition that a PPO may not be used as a "sword instead of a shield." In *Freeman*, the defendant was convicted of resisting and obstructing a police officer after officers attempted to handcuff defendant and place him under arrest for violating a PPO. *Id.* at 235-236. On appeal, the defendant argued that the evidence was insufficient to support his conviction because the prosecution failed to prove that the arrest was legal. The defendant further argued that remarks the prosecutor made had impermissibly shifted the burden of proof to him by requiring him to prove that the PPO was invalid. *Id.* at 236-237. We affirmed defendant's conviction, concluding that the information the officers obtained from the law enforcement information network provided reasonable cause for them to believe that the defendant had violated the PPO, subjecting him to immediate arrest. *Id.* We further found that the prosecutor's remarks, when considered in context, did not have the effect of impermissibly shifting the burden of proof to the defendant. *Id.* at 237. In a footnote, we added:

> Although the personal protection order itself is not at issue in this case, we express our concern raised by the facts of this case. This case illustrates the need to draft such orders carefully in order to avoid inconsistencies and confusion. Here, for example, the complainant's residence is listed in the body of the order as 38 N. Riviera Drive. The caption of the order, however, states that the complainant can be reached at 1419 Capital Avenue, # 32. The complainant was at defendant's address at 1419 Capital Avenue, # 32, when defendant was arrested for violating the order. Surely, a defendant must question the wisdom of an

order that makes it a violation of a court order to be in his own home, particularly when the complainant has a separate residence and makes the complaint to the police while at the defendant's residence. This would appear to allow personal protection orders to be used as a sword rather than a shield, contrary to the intent of the legislation that was quite properly designed and intended to protect spouses and others from predators. When personal protection orders are allowed to be misused because of careless wording or otherwise, then the law is correspondingly undermined because it loses the respect of citizens that is important to the effective operation of our justice system. [*Id.* at 237 n 1.]

Our discussion in *Freeman* concerning the possible misuse of PPOs was dictum and is not binding on this Court. See *People v Crockran*, 292 Mich App 253, 258; 808 NW2d 499 (2011). Nevertheless, we take this opportunity to distinguish *Freeman* from the case at bar. The sword/shield analysis in *Freeman* concerned a poorly drafted PPO. *Freeman* does not, as Dawn argues, shift the focus onto the behavior of the person who holds the PPO. We clarify that one who holds a PPO is under no obligation to act in a certain way. Instead, a court must look only to the behavior of the individual against whom the PPO is held. In this case, Dawn does not argue that the PPO was carelessly worded or incorrectly entered; rather, she argues that by placing herself in the courthouse when Dawn and Kenneth were bound to be there, Mary was inviting a confrontation. We do not find Mary's conduct to be relevant in evaluating whether Dawn was in violation of the PPO. When evaluating whether there has been a violation of a PPO, the proper focus is on the behavior of the individual against whom the PPO is held, *not* the behavior of the person who holds the PPO.

The trial court accepted Mary's testimony that she was in the courthouse to support her husband at his

show-cause hearing. It also accepted Mary's testimony that that she never approached Dawn or Kenneth. Thus, the trial court's findings suggest that it did not believe Mary used the PPO as a sword. More importantly, the trial court indicated that it was "not necessarily concerned" about whether Mary and Jaya approached Kenneth and Dawn. Instead, for purposes of the contempt proceedings the relevant consideration was whether Kenneth or Dawn or both violated the PPOs. The focus was properly on their conduct outside of the courtroom that morning. There was sufficient evidence for the trial court to find beyond a reasonable doubt that Dawn violated the PPO when she lunged at Mary with her finger pointed and yelled, "I have one thing to say to you, you're a f***ing bitch and I hate you."

### III. 404(b) EVIDENCE

Dawn argues that the trial court improperly relied on the fact that Kenneth had been loud and disruptive in the courtroom on prior occasions in unrelated proceedings. She claims that the trial court impermissibly relied on Kenneth's prior bad behavior in concluding that he acted in conformity therewith on the date in question, a violation of MRE 404(b)(1). Dawn failed to raise the issue in the trial court. We, therefore, review the issue for plain error. Under that standard, Dawn must show (1) that an error occurred, (2) that the error was plain, and (3) that the error affected substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). The third requirement necessitates a showing of prejudice—that the error affected the outcome of the lower court proceedings. *Id.*

MRE 404(b)(1) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

This Court has explained that "[t]o be admissible under MRE 404(b), bad-acts evidence must satisfy three requirements: (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; and (3) the probative value of the evidence must not be substantially outweighed by unfair prejudice." *People v Kahley*, 277 Mich App 182, 184-185; 744 NW2d 194 (2007). Although the rule is most often invoked in connection with criminal defendants, it also applies to witnesses. *People v Rockwell*, 188 Mich App 405, 409-410; 470 NW2d 673 (1991).

In this case, no evidence of Kenneth's past bad behavior was introduced. Instead, the trial court took judicial notice of Kenneth's disruptive behavior at other hearings. The trial court essentially found that because Kenneth had been disruptive in the past, he was likely disruptive in this case, and, therefore, he was lying about the circumstances of the incident. Thus, it appears that the trial court relied on Kenneth's prior acts to conclude that he acted in conformity therewith, a violation of MRE 404(b)(1).

However, we find no basis for reversal, as we do not believe that such a consideration was outcome determinative in Dawn's case. The trial court found Mary's and Jaya's testimony to be credible, even though there were some discrepancies. The trial court noted that Jaya had never been to court on previous matters and seemed

reluctant to testify, suggesting that she was a disinterested party worthy of belief. Their testimony was also supported by the trial court's law clerk, who heard the commotion and sought to defuse the situation. Additionally, the trial court found that Kenneth was not credible for reasons other than his past behavior. Kenneth's testimony and explanations were inconsistent. He went from denying any wrongdoing to admitting that he stepped in to defend Dawn, to admitting that he should have "kept my mouth shut." Reversal is not warranted because there is no indication that the error resulted in the conviction of an innocent defendant or substantially affected the fairness of the trial. Rather, there was overwhelming evidence that Dawn violated the PPO when she lunged at Mary with her finger pointed and yelled, "I have one thing to say to you, you're a f\*\*\*ing bitch and I hate you."

### IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Dawn next argues that her trial counsel was ineffective because he failed to assert that under *Freeman* the PPO was being improperly used as a sword rather than a shield. We disagree. Because Dawn failed to move for a *Ginther*[3] hearing, our review is limited to error apparent on the record. *People v Seals*, 285 Mich App 1, 19-20; 776 NW2d 314 (2009).

As previously discussed, we conclude that the language in *Freeman* regarding the use of a PPO as a sword is dictum and, further, confined to extremely narrow circumstances not applicable here. As such, trial counsel was not required to raise a meritless defense. *People v Rodriguez*, 212 Mich App 351, 356, 538 NW2d

---

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

42 (1995). Dawn fails to establish that she was denied the effective assistance of counsel.

Affirmed.

JANSEN, P.J., and WILDER, J., concurred with K. F. KELLY, J.