# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* MARY WILLIAMS.

---

DEPARTMENT OF HEALTH AND HUMAN SERVICES,

Petitioner-Appellee,

v

MARY WILLIAMS,

Respondent-Appellant.

UNPUBLISHED
December 28, 2017

No. 334460
St. Clair Circuit Court
Family Division
LC No. 14-000171-NA

---

Before: MURRAY, P.J., and K. F. KELLY and FORT HOOD, JJ.

PER CURIAM.

Respondent, Mary Williams, appeals as of right the trial court's order finding her in criminal contempt of court. For the reasons stated herein, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

This case arises out of respondent's testimony during child welfare proceedings. Respondent was a foster care worker for petitioner, the Department of Health and Human Services (DHHS). At a permanency planning hearing (PPH) on June 27, 2016, she testified regarding the status of AO, a 17-year-old temporary ward of the court. Specifically, respondent, on behalf of DHHS, requested that the court dismiss the case and give permission to release AO to the custody of her father, a military service member stationed in Hawaii.

Based on the request, the following exchange occurred between respondent and the court:

> *The Court*: Ms. Williams, what is necessary for information for your agency in order to have [AO] transferred to her father? I'm not going to dismiss it because she's not an adult, she's still a minor and mom has custody of her. So, once I dismiss this she goes back to mom not to dad because dad doesn't have legal custody – or physical custody. I can place her with father until she is eighteen but I cannot dismiss it and send her there because he doesn't have custody of her.

-1-

*Ms. Williams*: Okay, if we do the placement I think we have to go through Interstate Compact.

*The Court*: Well then you have to get it done.

*Ms. Williams*: Okay.

*The Court*: She's not going to be eighteen until September.

*Ms. Williams*: I'm sorry?

*The Court*: I think it's September—

*Ms. Williams*: Yes, September 2nd.

*The Court*: So, I cannot dismiss this and send her to her dad unless he has custody of her because she's still a minor. So, in order for me to place her there you have rules you have to follow and I expect you to work on it.

*Ms. Williams*: We're working towards it.

*The Court*: What's it going to take to get that done?

*Ms. Williams*: We'll ask for an emergency Interstate Compact.

*The Court*: Has it been done?

*Ms. Williams*: It hasn't been done yet because—

*The Court*: You haven't made the request yet?

*Ms. Williams*: No, we have not.

*The Court*: Well, I met with you and your supervisor and told you that that had to be done.

*Ms. Williams*: I was following the directions of my supervisor.

*The Court*: Instead of following the directions of the Court?

*Ms. Williams*: Sorry, yes, you're right.

*The Court*: Get it done.

In the order entered after the PPH, the court directed DHHS to complete an Interstate Compact for placement of AO with her father.

On July 1, 2016, Kristin Anderson, respondent's supervisor at DHHS, filed an affidavit with the court. In the affidavit, she acknowledged both that DHHS and the court had agreed on June 13, 2016, to pursue an Interstate Compact, and that on June 23, 2016, she spoke with

respondent about contacting a social worker on the military base to determine if the worker could complete a home study for AO's father in lieu of pursuing an Interstate Compact. Further, the affidavit stated that following the PPH on June 27, 2016, respondent approached Anderson in the DHHS hallway and stated that she threw Anderson under the bus by telling the court that her supervisor told her not to complete the Interstate Compact, did not actually believe Anderson instructed her not to do it, and was sorry for her actions in court. On the basis of the affidavit, the court entered an order directing respondent to show cause as to why she should not be held in criminal contempt for providing a false answer to a direct question from the court.

At the show cause hearing, Anderson testified that on June 13, 2016, DHHS and the court agreed that an Interstate Compact should be completed to begin the process of placing AO with her father. She then relayed the information to respondent and explained the importance of starting the Interstate Compact.

According to Anderson, despite discussing with respondent the potential for bypassing the Interstate Compact by working with the military to complete a home study, she never told respondent to forget the Interstate Compact. Instead, she testified, "It was presented as a very potential option, not a solid option, but we needed to look into it to see if it was an option but the Interstate still needed to be done."

Anderson further testified that when she spoke with respondent in the hallway of the DHHS offices on June 27, 2016, following the PPH: "[Respondent] did approach and said, 'I need to self-disclose.' And I said, what, and she said, 'I threw you under the semi.'" Then, in Anderson's office, respondent explained "that she told the Judge that she had not done the Interstate packet and she had told the Judge it is because I told her not too [sic]."

Three DHHS coworkers overheard the conversation between Anderson and respondent in the hallway, and each testified, in varying terms, that respondent told Anderson she threw her under the bus in court. One of the coworkers, Amber Jacobs, stated further, "I could hear [respondent] tell [Anderson] something along the lines that she had told the Judge whatever paperwork that was suppose [sic] to filed [sic] that her supervisor told her not to do it or she wasn't suppose [sic] to do it."

Respondent testified last at the hearing. She said that she never told the court that Anderson asked her not to work on the Interstate Compact. Instead, respondent insisted that by saying she had followed the directions of her supervisor, she meant that she had begun looking into a military home study, which turned her attention away from the Interstate Compact.

In his closing argument, petitioner's counsel argued that the evidence presented proved, beyond a reasonable doubt, that respondent lied to the court by implying that Anderson told her to stop working on the Interstate Compact. In response, respondent's counsel argued that the evidence actually demonstrated that respondent never lied to the court—she never stated that Anderson told her not to work on the Interstate Compact. Instead, the evidence showed that respondent began the Interstate Compact, but then pursued other options at Anderson's direction.

Ultimately, the trial court found respondent guilty, beyond a reasonable doubt, of criminal contempt for misrepresenting "the status of the Interstate Compact when she indicated that it had not been done because her supervisor told her not to do it." In so doing, it

acknowledged that respondent never explicitly said her supervisor told her not to do the Interstate Compact, but stated, "[T]he context of questions and answers, and the statements and answers by the Court and her response to it, make it clear to the Court that that's what she was telling me." The order entered by the court adopted its ruling on the record, and sentenced respondent to 30 days of community service and five days in jail if she failed to comply.

## II. ANALYSIS

Respondent argues that the court abused its discretion when it convicted her of criminal contempt because civil contempt would have been more appropriate, and because insufficient evidence existed to support a finding that she willfully lied or made a false representation to the court.

"Courts in Michigan have an inherent and statutory power to punish contempt of court by fine or imprisonment." *In re Contempt of Dudzinski*, 257 Mich App 96, 108; 667 NW2d 68 (2003), citing MCL 600.1701 *et seq*. Distinguishing between civil and criminal contempt is important because criminal contempt proceedings require additional due process safeguards. *Porter v Porter*, 285 Mich App 450, 456; 776 NW2d 377 (2009).[1] "When a court seeks to compel a contemnor to comply with its order requiring or forbidding some particular act, the court may use the *coercive* sanctions permitted by civil contempt[.]" *In re Contempt of Auto Club Ins Ass'n*, 243 Mich App 697, 711-712; 624 NW2d 443 (2000), citing MCL 600.1715, and MCL 600.1721. In contrast, criminal contempt is used to punish a "contemnor for past conduct that affronts the court's dignity." *In re Contempt of Auto Club Ins Ass'n*, 243 Mich App at 713. Thus, "[a] court exercising its criminal contempt power is not attempting to force the contemnor to comply with an order." *Id*.

Respondent asserts that because civil contempt is used to coerce compliance, "[t]he principled outcome would have been for the court to issue a civil contempt order for failure to complete the [Interstate] compact."[2] However, upon review of the record, we are convinced the trial court did not employ its contempt power to coerce respondent into complying with its order to complete the Interstate Compact. Instead, it used its contempt authority to sanction respondent for past behavior that affronted the court's dignity – namely misrepresenting the status of the Interstate Compact during the PPH – which, as described above, is a valid use of such power.[3] And the court's order reflected this purpose, sentencing respondent to community

---

[1] We note that respondent does not raise any procedural challenges to the court's contempt order, beyond arguing that civil contempt proceedings would have been more appropriate.

[2] Respondent failed to make this argument below, in either her hearing brief or at the show cause hearing. Generally, " '[f]or an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court.' " *Mouzon v Achievable Visions*, 308 Mich App 415, 419; 864 NW2d 606 (2014) (citation omitted). However, any potential preservation issues do not affect our analysis.

[3] This Court has previously upheld a trial court's finding of criminal contempt for lying to the court. See, e.g., *In re Contempt of Henry*, 282 Mich App 656; 765 NW2d 44 (2009).

service rather than imprisoning respondent until completion of the Interstate Compact. Thus, we hold that the court did not abuse its discretion by using criminal, instead of civil, contempt proceedings.

The question then becomes whether the court erred when it convicted respondent of criminal contempt based on the finding that respondent misrepresented the status of the Interstate Compact during the PPH. We review a trial court's decision to enter a contempt order for an abuse of discretion. *In re Kabanuk*, 295 Mich App 252, 256; 813 NW2d 348 (2012). "[R]eversal is warranted only when the trial court's decision is outside the range of principled outcomes." *In re Moroun*, 295 Mich App 312, 335-336; 814 NW2d 319 (2012) (opinion by K. F. KELLY, J.) (quotation marks and citation omitted; alteration in original). "A trial court's findings in a contempt proceeding are reviewed for clear error and must be affirmed on appeal if there is competent evidence to support them." *In re Contempt of Henry*, 282 Mich App 656, 668; 765 NW2d 44 (2009). We cannot "weigh the evidence or the credibility of the witnesses in determining whether there is competent evidence to support the findings." *Id.* at 668-669. "Clear error exists when this Court is left with the definite and firm conviction that a mistake was made." *Id.* at 669.

The elements of criminal contempt are "(1) a wilful disregard or disobedience of the order of the court, and (2) that the contempt is clearly and unequivocally shown." *People v MacLean*, 168 Mich App 577, 579; 425 NW2d 185 (1988). "A wilful disregard consists of an act, omission, or statement tending to impair the authority or impede the functioning of the court." *Id.* Further, the "contemptuous act must be proved beyond a reasonable doubt." *In re Contempt of Auto Club Ins Ass'n*, 243 Mich App at 714.

Respondent's statement that she was following the directions of her supervisor, when asked by the court if the Interstate Compact request had been made, formed the basis of her criminal contempt conviction. But respondent argues that she only meant she had begun looking into a military home study for AO's father, not that Anderson instructed her to abandon the Interstate Compact. Thus, she asserts, insufficient evidence existed to support a finding that she willfully made a false statement to the court, because Anderson admitted that she directed respondent to look into the military home study as an alternative to the Interstate Compact.[4]

It is true that respondent never explicitly told the court that she had not yet completed the Interstate Compact because Anderson directed her not to. And respondent's statement that she was following the directions of her supervisor could be open to multiple interpretations. Indeed, respondent testified at the show cause hearing that, had she not been interrupted by the court during the PPH, she would have explained that she had begun working on the military home study, at Anderson's request, which took her attention away from the Interstate Compact. Further, Anderson admitted, in both her affidavit and at the show cause hearing, that she did

---

[4] We note that respondent also lists the elements of perjury and asserts that petitioner failed to prove these elements at the show cause hearing. But perjury contains elements that criminal contempt does not, see *In re Contempt of Henry*, 282 Mich App at 677-678, and the court convicted respondent of criminal contempt, not perjury. Thus, we do not address that assertion.

direct respondent to look into obtaining a military home study that could potentially be used in lieu of the Interstate Compact.

Nevertheless, the court acknowledged these facts on the record, including that respondent never explicitly stated at the PPH that her supervisor directed her not to complete the Interstate Compact, but still found that respondent misrepresented the Compact's status because "the context of questions and answers, and the statements and answers by the Court and her response to it, make it clear . . . that that's what she was telling me." In so doing, it determined that respondent's testimony to the contrary at the show cause hearing was not believable.

As stated above, we cannot weigh evidence or the credibility of witnesses when reviewing a trial court's contempt findings for clear error. *In re Contempt of Henry*, 282 Mich App at 668-669. Thus, we must accept the court's determination that respondent's testimony regarding the meaning behind her statement at the PPH was not credible. And competent evidence supports the finding that respondent misrepresented the status of the Interstate Compact by implying she had not yet completed it because her supervisor told her not to. Respondent, Anderson, and three DHHS coworkers all testified that when respondent returned to the DHHS offices following the PPH, she said that she threw Anderson under the bus in court. Additionally, Anderson testified that during her conversation with respondent following the PPH, respondent said she told the court the Interstate Compact had not yet been requested because Anderson directed her not to do it. This was confirmed by one of the DHHS coworkers, who explained she "could hear [respondent] tell [Anderson] something along the lines that she had told the Judge whatever paperwork that was suppose [sic] to filed [sic] that her supervisor told her not to do it or she wasn't suppose [sic] to do it." And Anderson said that she never told respondent to abandon the Interstate Compact.

Thus, reviewing the record before us, we hold that the court did not abuse its discretion when it convicted respondent of criminal contempt. Sufficient evidence existed for the court to find, beyond a reasonable doubt, that respondent willfully disregarded the order of the court by misrepresenting the status of the Interstate Compact and implying that she had not completed the Compact at Anderson's direction.

Affirmed.


/s/ Christopher M. Murray
/s/ Kirsten Frank Kelly
/s/ Karen M. Fort Hood