*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* LOC.

---

MAH,

        Petitioner-Appellee,

v

LOC,

        Respondent-Appellant.

UNPUBLISHED
June 27, 2024

No. 365875
Calhoun Circuit Court
LC No. 2022-002576-PP

---

Before: CAMERON, P.J., and N. P. HOOD and YOUNG, JJ.

PER CURIAM.

Respondent appeals by right the trial court's judgment of criminal contempt, resulting from two violations of a personal protection order (PPO), MCL 600.2950(23). Respondent was sentenced to 93 days in jail for each violation, to run concurrently. On appeal, respondent argues that there was insufficient evidence to support his convictions. Respondent also argues that he was deprived of his constitutional right to present a defense because the trial court denied his adjournment request, thereby preventing him from presenting alibi evidence and testifying on his own behalf. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

This appeal arises from a PPO issued in response to petitioner's allegations regarding respondent's actions after their dating relationship ended. The PPO, which was issued on September 24, 2022, effectively prohibited respondent from contacting petitioner in any manner.

-1-

A police officer informed respondent of the PPO and its contents on October 2, 2022, but apparently did not serve respondent with a copy of the PPO.[1]

On January 1, 2023, respondent was arrested after allegedly attempting to enter petitioner's home. Five days later, petitioner moved for entry of an order requiring respondent to show cause why he should not be held in contempt for violating the PPO. Petitioner alleged that respondent violated the PPO by calling her on multiple occasions, loitering outside of her home, attempting to run her car off of the road, attempting to enter her home, groping her, spitting on her, and otherwise physically assaulting her. On January 9, 2023, the trial court granted petitioner's motion and ordered respondent to appear for a show-cause hearing. According to the proof of service documents, copies of the order and a notice of hearing were mailed to respondent. Respondent's counsel, acting on respondent's behalf, also acknowledged service of petitioner's motion and the trial court's order.

The trial court held a show-cause hearing on January 20, 2023, but respondent did not appear. Accordingly, the trial court revoked his bond and issued a bench warrant for his arrest. Over a week later, respondent appeared. He claimed that he failed to appear for the January 20 hearing because the mailed documentation did not state a date or time for the hearing. As discussed below, and as later recognized by the trial court, this was false. The order to show cause for violating a valid PPO and the notice of hearing, which were mailed to respondent per the proof of service documents, expressly listed the date and time of the contested hearing, and the acknowledgement of service was signed by respondent's counsel on January 11, 2023. Nonetheless, the trial court set aside the warrant, reinstated his bond, and arraigned him on the alleged PPO violation. The trial court set a supplemental show-cause hearing for February 10, 2023.

The day of the hearing, respondent's counsel requested an adjournment, citing her inability to locate respondent until the day before the hearing and her need for additional time to obtain alibi evidence as the bases for adjournment. The trial court denied the adjournment request, reasoning that the show-cause hearing had already been adjourned, and respondent delayed requesting the adjournment until the very start of the hearing and without justification.

During the show-cause hearing, petitioner testified that respondent violated the PPO on at least three separate occasions. She described a series of events that occurred on November 4, 2022, December 11, 2022, and January 1, 2023.

On November 4, 2022, respondent repeatedly called petitioner between midnight and 6:00 a.m. That same day, petitioner saw an individual, whom she believed to be respondent, parked outside of her home in his mother's car. Petitioner called the police and left her home to drive to a nearby police station. The individual followed petitioner and attempted to "run [her] off the road" by driving dangerously close to her car. After petitioner arrived at the police station, respondent called her and stated that he would have "ran [her] off the road[]" if he had been in his own car.

---

[1] Respondent does not challenge the efficacy of service on appeal.

On December 11, 2022, respondent approached petitioner at a country club and demanded that they have a conversation. Petitioner was there for a family gathering, and respondent was not invited or expected. Respondent stated that he would cause a scene if petitioner refused to speak to him. Petitioner refused to speak with respondent and chose to leave. Respondent followed petitioner to the parking lot and prevented her from entering a family member's car by holding the door closed. Later that day, respondent approached petitioner at a house party, touched her buttocks, and spit in her face. As petitioner tried to leave, respondent repeatedly punched her in the face, causing her to lose consciousness. Petitioner later received medical treatment for her injuries, including stitches.[2]

On January 1, 2023, respondent called petitioner multiple times while outside of her home, which prompted petitioner to call the police. Before the police arrived, respondent repeatedly pounded on petitioner's door in what petitioner characterized as an attempt to enter her home. Police officers later arrested respondent outside of petitioner's home.

Petitioner's mother corroborated portions of petitioner's testimony. Namely, she testified that on December 11, 2022, she observed petitioner's injuries while at the hospital where petitioner received medical treatment. That same day, she overheard an alleged telephone call during which respondent told petitioner that he was not worried about going to jail.

After the prosecution presented its proofs, the trial court advised respondent of his right to remain silent and that his testimony could be used against him in a then-pending related criminal matter. After speaking with his counsel, respondent declined to testify on his own behalf. Ultimately, the trial court concluded there was sufficient to evidence to find beyond a reasonable doubt that respondent violated the PPO. Specifically, the trial court stated that it found petitioner's testimony credible. Respondent was convicted of two counts of criminal contempt and sentenced to 93 days in jail for each count, to run concurrently. This appeal followed.

II. SUFFICIENCY OF THE EVIDENCE

Respondent argues that there was insufficient evidence to support his criminal-contempt convictions. We disagree.

An individual who fails to comply with a domestic PPO issued under MCL 600.2950 is subject to the criminal-contempt powers of the court. See MCL 600.2950(23). We review for an abuse of discretion a trial court's decision to hold an individual in contempt. *ARM v KJL*, 342 Mich App 283, 293; 995 NW2d 361 (2022). An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes. *Id*. When examining the sufficiency of the evidence supporting a criminal-contempt conviction, we view the evidence in a light most favorable to the prosecution to determine if the elements of the crime were proven beyond a reasonable doubt. *In re JCB*, 336 Mich App 736, 748-749; 971 NW2d 705 (2021). We review the trial court's factual findings for clear error and must affirm if there is competent evidence to

---

[2] During the show-cause hearing, the trial court admitted into evidence multiple photographs that depicted petitioner's alleged injuries.

support them. *Id.* We further review de novo questions of law underlying the trial court's decision. *In re Contempt of Henry*, 282 Mich App 656, 668; 765 NW2d 44 (2009).

If an individual violates a PPO, the petitioner may move for the court to find them in contempt. See MCR 3.708(B)(1). Criminal contempt, or the willful disobedience of a court order, is a quasi-crime because it is not intended to punish conduct proscribed by general criminal laws, but rather is designed to serve the limited purpose of vindicating the trial court's authority. *In re LT*, 342 Mich App 126, 134-135; 992 NW2d 903 (2022). See also *Porter v Porter*, 285 Mich App 450, 456; 776 NW2d 377 (2009) (explaining that criminal contempt is intended to punish the contemnor for past conduct that affronts the dignity of the court). In a criminal-contempt proceeding, "[t]he petitioner or the prosecuting attorney has the burden of proving the respondent's guilt of criminal contempt beyond a reasonable doubt . . . ." MCR 3.708(H)(3). A reasonable doubt is an "honestly entertained" doubt, which arises from a defect of knowledge or evidence. *People v Allen*, 466 Mich 86, 91-92; 643 NW2d 227 (2002), quoting *People v Steubenvoll*, 62 Mich 329, 334; 28 NW 883 (1886). Sufficient evidence can be established by direct evidence, circumstantial evidence, or reasonable inferences that arise therefrom. *In re Contempt of Henry*, 282 Mich App at 677.

Here, the domestic PPO at issue prohibited respondent from stalking petitioner as defined in MCL 750.411h and MCL 750.411i, which included, but was not limited to, the following:

- Following petitioner or appearing within her sight;
- Sending mail or other communications to petitioner;
- Approaching or confronting petitioner in a public space or on private property;
- Entering onto or remaining on property owned, leased, or occupied by petitioner;
- Placing an object on or delivering an object to property owned, leased, or occupied by petitioner;

- Appearing at petitioner's workplace or residence;
- Contacting petitioner by telephone.

The PPO further barred respondent from threatening to kill or physically injure petitioner and assaulting, attacking, beating, molesting, or wounding petitioner. It provided that any PPO violation subjected respondent to arrest and the trial court's criminal-contempt powers.

During the show-cause hearing, petitioner testified that respondent violated the PPO on multiple occasions. She described a series of events that occurred on November 4, 2022, December 11, 2022, and January 1, 2023. Notably, petitioner testified that respondent contacted her many times, loitered outside of her home, attempted to enter her home, attempted to run her car off of the road, impeded her attempt to enter a family member's car, touched her buttocks, spit in her face, and repeatedly punched her in the face, causing her to lose consciousness and seek medical treatment. Petitioner's testimony was corroborated, in part, by her mother's testimony and photographs depicting her alleged injuries. In short, as the trial court observed, there was an abundance of evidence that respondent violated the PPO at least twice. Because this Court does not weigh the evidence or the credibility of the witnesses, *In re Kabanuk*, 295 Mich App 252, 256; 813 NW2d 348 (2012), and because the trial court is in a better position to assess the witnesses' testimony, this Court defers to its credibility determinations. See MCR 2.613(C). The evidence

-4-

was sufficient to permit a rational trier of fact to find beyond a reasonable doubt that respondent violated the PPO, and the trial court properly found respondent guilty of two counts of criminal contempt.

## III. ADJOURNMENT

Respondent argues that the trial court abused its discretion when it denied his adjournment request, thereby depriving him of his constitutional right to present a defense. We disagree.

"A trial court's ruling on a motion to adjourn is reviewed for an abuse of discretion." *Pugno v Blue Harvest Farms LLC*, 326 Mich App 1, 27; 930 NW2d 393 (2018), citing *Woodard v Custer*, 473 Mich 1, 12; 702 NW2d 522 (2005) (CAVANAGH, J., concurring in part and dissenting in part). An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes. *Pugno*, 326 Mich App at 27-28. On the other hand, constitutional claims, such as the alleged deprivation of the right to present a defense, are reviewed de novo. *People v Warner*, 339 Mich App 125, 144; 981 NW2d 733 (2021).

Contempt proceedings are referred to as "quasi-criminal" or "criminal in nature." *Porter v Porter*, 285 Mich App 450, 456; 776 NW2d 377 (2009), quoting *In re Contempt of Dougherty*, 429 Mich 81, 90; 413 NW2d 392 (1987) (quotation marks omitted). Therefore, an individual charged with criminal contempt is presumed innocent and enjoys the right against self-incrimination. *Porter*, 285 Mich App at 456. Criminal contempt must be proven beyond a reasonable doubt. *Id*. Furthermore, an individual charged with criminal contempt must be informed of the nature of the charge against them and afforded adequate opportunity to present a defense and secure the assistance of counsel. *Id*.

But an individual's right to present a defense is not absolute. *People v Daniels*, 311 Mich App 257, 265; 874 NW2d 732 (2015). Namely, they must comply with "established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Id*., quoting *People v Yost*, 278 Mich App 341, 379; 749 NW2d 753 (2008). MCR 2.503 is the established rule of procedure governing adjournments. *Daniels*, 311 Mich App at 265, citing MCR 2.503.

A party requesting a trial adjournment must make the request by motion, stipulation in writing, or orally in open court, and it must be based on good cause. See MCR 2.503(B)(1). "Good cause factors include whether [the respondent] (1) asserted a constitutional right, (2) had a legitimate reason for asserting the right, (3) had been negligent, and (4) had requested previous adjournments." *Daniels*, 311 Mich App at 266, quoting *People v Coy*, 258 Mich App 1, 18; 669 NW2d 831 (2003) (quotation marks omitted). A party seeking adjournment because of the unavailability of a witness or evidence must move to adjourn "as soon as possible after ascertaining the facts." MCR 2.503(C)(1). The trial court may grant such a request "only if the court finds that the evidence is material and that diligent efforts have been made to produce the witness or evidence." MCR 2.503(C)(2). "Even with good cause and due diligence, the trial court's denial of a request for an adjournment . . . is not grounds for reversal unless the [respondent] demonstrates prejudice as a result of the abuse of discretion." *Daniels*, 311 Mich App at 266, quoting *Coy*, 258 Mich App at 18-19 (quotation marks omitted).

At the start of the trial court's supplemental show-cause hearing, respondent's counsel requested an adjournment because of her inability to locate respondent until the day before the hearing[3] and her need for additional time to obtain alibi evidence. This was the equivalent of requesting an adjournment of a trial on the day of trial. The trial court denied the adjournment request, reasoning that the show-cause hearing had already been adjourned, and respondent delayed in requesting the adjournment without justification.

The trial court did not abuse its discretion when it denied respondent's adjournment request. Respondent failed to establish good cause warranting an adjournment. Even if respondent had done so, he failed to demonstrate prejudice stemming from the trial court's denial of his adjournment request.

Respondent moved for an adjournment at the start of the supplemental show-cause hearing held on February 10, 2023. By that time, the trial court had already adjourned the show-cause hearing once because of respondent's absence. Although the trial court acknowledged that documents mailed to respondent may have caused "some confusion" regarding the initial hearing date because some included the date while others did not, the trial court accurately recognized that respondent had notice of the initial hearing, as evidenced by the corresponding proof of service. Furthermore, the record reflects that respondent's failure to identify and present alibi evidence was attributable to his own conduct. The court sent respondent notice of the initial show-cause hearing on January 6, 2023, and his counsel filed an appearance on January 9, 2023. Yet, respondent failed to discuss the case with his counsel until the day before the supplemental show-cause hearing. These circumstances indicate that respondent failed to make a diligent effort to identify and present alibi evidence.

Respondent argues that he was prejudiced by the trial court's denial of his adjournment request and, therefore, deprived of his right to present a defense. In requesting the adjournment, respondent's counsel stated that there was "[p]ossibly some alibi – an alibi witness and some information or some evidence that he can get me from where he was at work on the day in question." Although respondent's counsel identified the general nature of her intended investigation, it is unclear whether any of the referenced evidence actually existed. Without more, there is no reason to believe that respondent was prejudiced by the denial of his adjournment request. Respondent further argues that the trial court's denial of his adjournment request prevented him from testifying on his own behalf, for fear of incriminating himself relative to a related criminal matter arising out of respondent's contacts with petitioner. Yet, respondent chose not to testify after the trial court advised him of his right to remain silent and afforded him the opportunity to discuss the matter with his counsel. It is also unclear from the record whether the related criminal matter could have been resolved during an ensuing adjournment period. And more broadly, permitting an adjournment based solely on the pendency of another criminal proceeding creates the potential for unwarranted delay. For instance, in an effort to slow the proceedings, a defendant facing multiple criminal matters could seek to adjourn each matter based on their

---

[3] Respondent's counsel explained that she had trouble locating respondent because he was temporarily incarcerated in relation to a criminal matter arising out of respondent's contacts with petitioner.

ostensible wish to testify without fear of self-incrimination. In light of these circumstances, respondent failed to demonstrate prejudice stemming from the trial court's denial of his adjournment request.

## IV. CONCLUSION

The trial court did not abuse its discretion when it denied respondent's adjournment request, and respondent was not deprived of his constitutional right to present a defense. We affirm.

/s/ Thomas C. Cameron
/s/ Noah P. Hood
/s/ Adrienne N. Young