*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

REBECCA TIEPPO,

        Defendant-Appellant.

UNPUBLISHED
December 16, 2024
11:25 AM

No. 368757
Wayne Circuit Court
LC No. 23-004169-01-AS

Before: RIORDAN, P.J., and BOONSTRA and YATES, JJ.

PER CURIAM.

Defendant appeals by right an order of probation entered after the trial court found her in criminal contempt of court. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant, a criminal defense attorney, was appointed to represent a defendant charged with armed robbery. On the second day of the jury trial in that case, the prosecutor, jury, and out-of-town witnesses were all present; however, defendant failed to appear. The clerk and court reporter called defendant several times throughout the morning but were unable to reach her. Around noon, the judge[1] sent the jury to lunch because defendant had still not appeared or contacted the court. Court staff then contacted the local police department to perform a wellness check on defendant at her home. Before the officers arrived at defendant's home, the prosecutor called defendant and was able to speak with her. Although defendant did not explain her absence, she told the prosecutor that she had contacted the court that morning. Shortly thereafter, officers met defendant at her home. Defendant told the officers that she had spoken with the prosecutor

---

[1] In this opinion, we will refer to the judge of the criminal case underlying defendant's contempt charge as "the judge," and we will refer to the judge of the contempt proceedings against defendant as "the trial court."

and had contacted the court. Defendant did not indicate to either the prosecutor or the officers that she would be appearing in court that day; accordingly, the judge declared a mistrial.

A few days later, the judge sua sponte entered an order to show cause, directing defendant "to show cause why she should not be held in contempt of court" given her failure to appear on the second day of trial. The order stated that defendant's "[f]ailure to appear will result in the issuance of an arrest warrant." At the show cause hearing, the judge stated: "Well, [defendant], you know better than anyone here why you are in front of me. I issued an Order to Show Cause for you to appear so that I could officially advise you of the Contempt of Court Action that we contemplate[.]" The trial court informed defendant that she was facing indirect criminal contempt proceedings, there would be a contempt hearing before a different judge, and that she was entitled to be represented by counsel. At the end of the hearing, without any arguments or comments from defendant or the prosecutor, the judge imposed a $10,000 bond and ordered defendant to wear a GPS tether pending her contempt hearing. Five days later, at a prehearing conference before the trial court, the trial court granted defendant's request to remove the tether.

During a second prehearing conference, defendant indicated that she had not been able to retain counsel for the contempt hearing and requested an adjournment. During the conference, defendant was represented "on a limited basis" by the president of the Wayne County Criminal Defense Bar Association. The president explained that she had unintentionally failed to ensure that defendant, a member of the defense bar association, was represented by counsel in the proceedings. Additionally, the prosecution placed on the record that the proceeding against defendant was a criminal contempt proceeding, and informed defendant of her rights, including her right to counsel, the presumption of innocence, to have the allegations against her proven beyond a reasonable doubt, and to call any witnesses in her defense.

Defendant was represented by counsel at the subsequent contempt hearing. At the hearing, the judge, prosecutor, court staff, and a responding officer testified that defendant had never contacted the court regarding her absence or explained why she had failed to appear. Defendant testified that she was absent because the night before trial, her husband had a "life or death" medical emergency and she was up all night caring for him at home. Rather than contact the court directly, defendant sent a text message to an investigator from the Indigent Defendant Services Department (IDSD) asking the investigator to contact the court on her behalf. Defendant also e-mailed IDSD's general e-mail address asking for assistance in informing the court of her absence. Defendant testified that the IDSD investigator contacted defendant shortly after 9:00 a.m. on the second day of trial, and told defendant that she would speak with someone at IDSD about contacting the court, or even go to the court in person to inform them of defendant's absence. Based on her efforts, defendant did not think there was any reason for concern. However, after her husband's medical emergency had resolved at approximately 11:30 a.m., defendant learned that no one had contacted the court; she checked her phone and saw that she had several missed calls, and shortly thereafter she spoke with the prosecutor and local police as described. Defendant never contacted the court directly regarding her absence.

The prosecution argued that defendant's conduct impaired the functioning of the court because the judge declared a mistrial after defendant failed to appear or provide the court with any information regarding whether she was going to continue with the trial. The prosecution further argued that despite contacting the investigator and IDSD, defendant's actions were willful because

she intentionally chose not to appear for trial, and, after learning from the prosecutor and officers that the court was looking for her, she failed to contact the court or explain her absence. Defendant argued that although her absence was disruptive, it was not willful because her actions did not demonstrate "a deliberate [or] intentional defiance of court authority." Instead, defendant's actions demonstrated an "imperfect" attempt to notify the court of her absence. The trial court found defendant in contempt and ordered that defendant pay a fine, be placed on a six-month probation period, and undergo psychological and substance abuse evaluation. This appeal followed.

## II. DUE PROCESS

Defendant argues that she was denied due process of law because the trial court failed to adequately inform her of the contempt charges and her constitutional rights, particularly her right to appointed counsel. We disagree. Generally, "[w]hether a party has been afforded due process is a question of law, subject to review de novo." *In re Contempt of Henry*, 282 Mich App 656, 668; 765 NW2d 44 (2009). But defendant's argument that the trial court deprived her of due process by failing to inform her of the charges against her and her constitutional rights is not properly preserved because she did not raise the issue below. See *People v Anderson*, 341 Mich App 272, 279; 989 NW2d 832 (2022). Consequently, we review defendant's argument for plain error affecting substantial rights. *In re Kabanuk*, 295 Mich App 252, 259; 813 NW2d 348 (2012), citing *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). To show that an error affected substantial rights, a defendant must demonstrate prejudice, i.e., a reasonable probability that the error affected the outcome of the lower court proceedings. *Id*.

"Contempt of court is a willful act, omission, or statement that tends to impair" a court's authority or impedes its functioning. *In re Contempt of Robertson*, 209 Mich App 433, 436; 531 NW2d 763 (1995). Courts have inherent independent authority, as well as statutory authority, to punish a person for contempt. MCL 600.1701 *et seq.*; *In re Contempt of Dougherty*, 429 Mich 81, 91-92 n 14; 413 NW2d 392 (1987); *In re Contempt of Auto Club Ins Ass'n*, 243 Mich App 697, 708-709; 624 NW2d 443 (2000). But a trial court must "carry out the proper procedures before it can issue an order holding a party or individual in contempt of court." *In re Moroun*, 295 Mich App 312, 330; 814 NW2d 319 (2012).

Contempt may be direct or indirect. Direct contempt occurs in the presence of the court. *Robertson*, 209 Mich App at 437-438. But "[i]f the contemptuous conduct occurs outside the court's direct view," it is "indirect contempt" and "the court must hold a hearing to determine whether the alleged contemnor actually committed contempt." *Auto Club*, 243 Mich App at 712-713; see also MCL 600.1711(2). For an indirect contempt proceeding, courts may either order the accused individual "to show cause, at a reasonable time specified in the order, why that person should not be punished for the alleged misconduct," or "issue a bench warrant for the arrest of the person." MCR 3.606(A). In lieu of arrest, courts may impose a bond "prescribing in the bench warrant the penalty of the bond and the return day for the defendant." MCR 3.606(C)(1).

Additionally, "courts have two different forms of the contempt power at their disposal," civil and criminal contempt. *Id*. at 711-714. "Criminal contempt is a crime in the ordinary sense; it is a violation of the law, a public wrong which is punishable by fine or imprisonment or both." *Henry*, 282 Mich App at 666 (quotation marks and citations omitted).

A criminal contempt proceeding requires some of the safeguards of an ordinary criminal trial. A defendant charged with contempt is entitled to be informed whether the proceedings are civil or criminal. Further, a defendant in a criminal proceeding is entitled to be informed of the charge, to be given an opportunity to prepare his or her defense, and to secure the assistance of counsel. The defendant has a presumption of innocence and a right against self-incrimination. [*Id*. at 669 (citations omitted).]

"Criminal penalties may not be imposed upon an individual who was not afforded the protections that the Constitution requires in criminal proceedings." *Ferranti v Electric Resources Co*, 330 Mich App 439, 448; 948 NW2d 596 (2019).

In this case, the show cause order directed defendant "to appear to show cause why she should not be held in contempt of court," based on her failure "to appear for the second day of trial . . . ." The order also stated that the "[f]ailure to appear will result in the issuance of an arrest warrant." During the show cause hearing, the judge informed her that she was accused of indirect criminal contempt and was entitled to a hearing in front of a different judge and to be represented by counsel. At a prehearing conference, the prosecution placed on the record that "this is a criminal contempt hearing that is going to be presented against [defendant]." The prosecution also stated that the allegations against defendant were that she willfully failed to appear on the second day of a criminal trial at which she was the attorney of record. The prosecution also informed defendant of her rights, including her right to counsel, the presumption of innocence, that the prosecution would have to prove the allegations against her beyond a reasonable doubt, and her right to call any witnesses to defend against the allegations.

On the record before this Court, defendant has failed to show that the trial court clearly deprived her of due process. Defendant knew that she was facing an indirect criminal contempt proceeding as a result of her failure to appear for the second day of trial. She was informed of her rights and exercised her right to counsel at the prehearing conference and throughout the contempt hearing. Because defendant appeared for the show cause hearing, the judge did err by imposing a $10,000 bond and ordering defendant to wear a GPS tether before the contempt hearing. See MCR 3.606(C). But this error was rectified five days later, and there is no indication that the error impacted the ultimate outcome of the contempt proceedings. See *Kabanuk*, 295 Mich App at 259.

Defendant argues that she was denied due process because the trial court did not make any effort to appoint her counsel despite the fact that it was "implied" that she did not have the resources to obtain counsel herself. The record demonstrates that defendant's claim has no merit. During the prehearing conference, defendant indicated that although she had been in contact with a few attorneys, she had not yet been able to retain counsel for the contempt hearing. The president of the Wayne County Criminal Defense Bar Association, who represented defendant during the prehearing conference, explained that her failure to help ensure that defendant was represented by counsel was a mere oversight. Neither defendant nor the president stated, directly or indirectly, that defendant did not have the means to secure counsel, nor did defendant request an appointed attorney. Courts are only required to provide legal counsel to indigent criminal defendants who request an attorney. See *People v Jackson*, 483 Mich 271, 278; 769 NW2 630 (2009). Because there is no indication that defendant was indigent and she never made such a request, the court was not obligated to appoint counsel.

-4-

Moreover, even if the trial court had erred by failing to appoint counsel for defendant or adjourn the contempt hearing to allow defendant additional time to retain an attorney, this error would not require reversal. Defendant contends that the trial court's "failure" to appoint counsel prevented her from preparing a proper defense, because counsel did not have adequate time to investigate witnesses or obtain exhibits to support her testimony, such as IDSD's and the trial court's e-mail and phone records. But defendant was made aware of her right to counsel during the show cause hearing, giving her nearly an entire month to secure counsel and prepare a defense. Additionally, defendant was provided with the prosecution's witness list several days before the contempt hearing. At the contempt hearing, defense counsel had the opportunity to cross-examine witnesses, present a defense on defendant's behalf, and argue for a lesser sentence. Additionally, defendant does not explain how additional time to investigate witnesses or obtain the trial court's phone and e-mail records would have assisted her defense, given that there was no dispute that she had e-mailed IDSD and had not contacted the court directly. Defendant has not shown plain error. *Kabanuk*, 295 Mich App at 259.

## III. INSUFFICIENT EVIDENCE

Defendant also argues that the trial court abused its discretion by finding her in criminal contempt of court because there was insufficient evidence to prove, beyond a reasonable doubt, that she willfully impeded the function of the court. We disagree.

"When examining the sufficiency of the evidence to support a criminal-contempt finding following a bench trial, this Court views the evidence presented in a light most favorable to the prosecution to determine if the elements of the crime were proven beyond a reasonable doubt." *In re JCB*, 336 Mich App 736, 747; 971 NW2d 705 (2021). "[T]he trial court's factual findings in a contempt proceeding are reviewed for clear error, and we must affirm if there is competent evidence to support them." *Id*. "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake has been made." *DeGeorge v Warheit*, 276 Mich App 587, 591; 741 NW2d 384 (2007) (citation omitted). "We may not weigh the evidence or the credibility of the witnesses in determining whether there is competent evidence to support the findings." *Kabanuk*, 295 Mich App at 256.

As stated, "[c]ontempt of court is a willful act, omission, or statement that tends to impair" a court's authority or impedes its functioning. *Robertson*, 209 Mich App at 436. "In order to find a defendant guilty of criminal contempt, a willful disregard or disobedience of a court order must be clearly and unequivocally shown and proven beyond a reasonable doubt." *In re LT*, 342 Mich App 126, 135; 992 NW2d 903 (2022) (quotation marks and citation omitted). A willful act is an act that is "[d]one wittingly or on purpose, as opposed to accidentally or casually; voluntary and intentional, but not necessarily malicious." Black's Law Dictionary (12th ed). "A voluntary act becomes willful, in law, only when it involves conscious wrong or evil purpose on the part of the actor, or at least inexcusable carelessness, whether the act is right or wrong." *Id*.

In this case, defendant undisputedly impeded the functioning of the court. The judge delayed the proceedings for nearly three hours while waiting for defendant to appear, and court personnel and police officers were tasked with locating her. Defendant's absence ultimately resulted in a mistrial. Although defendant argues that the trial court did not consider whether the judge was correct in declaring a mistrial, the court was not required to do so. The court simply

needed to determine whether defendant's action impeded the court's ability to continue with trial. See *Robertson*, 209 Mich App at 436. In any event, the judge could not have continued the trial that day without the defendant's attorney present; regardless of whether a mistrial rather than an adjournment was an appropriate response, defendant's conduct clearly impeded the court's ability to continue proceedings that day. The trial court noted that defendant's failure to appear not only delayed a criminal trial, but caused unnecessary expenses to be incurred by the prosecution, inconvenienced out-of-state witnesses and jurors, forced defendant's client to remain in custody, and "clogged" up the legal system because a new trial had to be scheduled. Defendant suggests that when the judge learned that she was at home on the day she missed trial, he could have contacted her to determine whether she would reappear for court the next day. But defendant cites no authority for the proposition that it was the court's burden to make further efforts to contact her to ensure that she would appear, when she had already failed to return any of the court's phone calls or explain her absence to the prosecutor or police. Accordingly, the evidence presented at the contempt hearing was sufficient to establish that defendant's actions, or rather, inaction, clearly impeded the court's ability to continue with the criminal proceedings. See *id*.

Additionally, defendant claimed that her absence without explanation was not willful, testifying that she was unable to contact the court because the judge's e-mail address and phone number were not listed on the court's website, and claiming that she did not think she would have been able to reach the prosecution. As a result, defendant asked the IDSD investigator to contact the court and sent a message to a general IDSD e-mail address asking for assistance. But defendant admitted that she had the phone numbers for other courtrooms in the same courthouse and that she could have called them to obtain the judge's contact information, that there was a phone number listed on the court's website for the courtroom in which the trial was being held, and that she knew IDSD was not an employee or agent of the court. Without ever making any effort to contact the court directly, defendant relied on the investigator's representation that a third party would reach out to the court on her behalf. Further, even after learning that the court was looking for her, defendant *never* contacted the court to follow up about her absence. Even if defendant's initial failure to contact the court could be characterized as an accidental act given that she claimed to be in the middle of a "life-or-death" medical emergency with her husband, the medical emergency had ended by the time defendant learned that the court was looking for her. A reasonable factfinder could have found defendant's voluntary and intentional decision to not follow up with the trial court to have been a willful act of contempt. See *In re LT*, 342 Mich App at 135; *Robertson*, 209 Mich App at 436.

Defendant claims that the trial court failed to "give any consideration" to the fact that she was dealing with her husband's medical emergency when finding that she was in contempt of court. The record shows the trial court considered this fact, but found some of defendant's testimony regarding this event to be incredible and unsupported by any evidence. During the contempt hearing, defendant did not attempt to introduce any evidence corroborating her testimony that her husband was suffering from a medical emergency on the morning she missed trial. Defendant claims that the reason there was no evidence to corroborate her testimony was because the trial court failed to offer her appointed counsel. But defendant was represented by counsel throughout the contempt hearing, and counsel could have easily called defendant's husband to testify regarding his medical emergency. Any failure to introduce evidence in support of defendant's testimony was not a result of a trial court error.

Because the trial court's factual findings were supported by competent evidence, and we "may not weigh the evidence or the credibility of the witnesses in determining whether there is competent evidence to support the findings," *Kabanuk*, 295 Mich App at 256, we conclude that the evidence in support of the trial court's finding of contempt was sufficient. See *In re JCB*, 336 Mich App at 747.

Affirmed.


/s/ Michael J. Riordan
/s/ Mark T. Boonstra
/s/ Christopher P. Yates