*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KATIE AMBER PREECE,

UNPUBLISHED
February 25, 2025
10:29 AM

Plaintiff-Appellant,

v

No. 370622
Wayne Circuit Court
LC No. 14-165749-DP

FELIPE D. GOMEZ,

Defendant-Appellee.

Before: YATES, P.J., and LETICA and N. P. HOOD, JJ.

PER CURIAM.

Plaintiff, Katie Amber Preece, appeals by right the circuit court's April 1, 2024 order, which denied plaintiff's motion to show cause defendant, Felipe D. Gomez, for violating the court's parenting-time order and awarded defendant sole physical and legal custody of the parties' minor child. Because the circuit court misapplied the law, we vacate its April 1, 2024 order and remand for further proceedings consistent with this opinion.

This case arises from a paternity action after the birth of the parties' child in 2014. Review of the lower court record confirms that the proceedings have been contentious. On numerous occasions, the parties have asserted violations of the circuit court's parenting-time orders and have sought repeated modification of its custody orders.

Initially, the circuit court awarded plaintiff sole legal and physical custody of the child. But, in 2015, the court entered an order of filiation that awarded the parties joint legal custody and plaintiff sole physical custody. In 2017, the court awarded the parties both joint legal and physical custody. In 2018, after plaintiff was seriously injured in an accident, the court entered an order "temporarily" awarding defendant sole legal and physical custody. Later that same year, the court granted defendant "temporary sole legal and sole legal custody" of the child. In 2020, the court ordered that "the orders for custody and parenting time . . . continue without modification until . . . further order of the court."

On September 29, 2022, plaintiff filed her motion to show cause, alleging parenting time violations by defendant. The same day, plaintiff filed a motion to modify custody. On November 28, 2022, the circuit court ordered that plaintiff be "granted temporary joint legal

-1-

custody" of the child and directed that an evidentiary hearing be scheduled on plaintiff's September 2022 motion to modify custody.[1] An evidentiary hearing was scheduled for January 31, 2023. But, there is no indication in the register of actions or the lower court record that the hearing occurred.

In March 2023, plaintiff supplemented her motion for "full custody," requesting "full legal custody" and supervised parenting time for defendant until he was cleared by a psychologist. Plaintiff attached the Guardian Ad Litem's (GAL's) recommendation that the parties be "awarded joint legal custody" and that plaintiff be "awarded primary residence of the . . . child." The GAL's recommendation recognized that the GAL had not interviewed defendant.[2]

After a hearing on June 2, 2023, the referee recommended that the parties be referred to the judge for a determination on custody and parenting time. The referee explained that the prior temporary custody orders had not "been resolved and . . . [were] further complicated by entry of [a maternal] grandparenting time order." The referee assumed that the judge had already made the threshold determination required to change legal custody under *Vodvarka v Grasmeyer*, 259 Mich App 499 (2003), when he entered the 2022 order granting plaintiff temporary joint legal custody. And, because defendant had been awarded temporary physical custody, the referee determined that that matter had to be referred to the judge as well. The referee added: "It is imperative that the Court enter final orders regarding custody and parenting time to avoid confusion and conflict among the parties."

The referee's order was to be final if no objection was made within 21 days. Plaintiff objected to the parenting-time schedule because it afforded defendant parenting time on the child's birthday. Plaintiff asked that the referee's recommendation and order be amended solely to provide for alternating parenting time on the child's birthday.

Thereafter, the parties were ordered to attend mediation and an evidentiary hearing was scheduled in October 2023. A hearing was held. The trial court determined that the parties should attempt to resolve the matter through mediation. If mediation was unsuccessful, the parties would be required to appear in-person at a status conference.

On January 9, 2024, plaintiff filed a motion to show cause, asserting that defendant had violated the court-ordered parenting time again by failing to bring the child to her on Christmas Eve. In this motion, plaintiff alleged that the show cause motion filed two years earlier had never been resolved. On January 19, defendant's long-time attorney filed a motion to withdraw, stating

---

[1] Plaintiff's motion requested "temporary and permanent legal and physical custody" of the child.

[2] The court ordered the parties to equally split the cost of the GAL. Defendant declined to pay $1,500 to be evaluated by the GAL. Plaintiff's counsel then sent defense counsel a letter explaining that he could file a motion to hold defendant in contempt or they could "come up with a consent agreement to modify custody." Thereafter, plaintiff filed a motion to show cause defendant for failing to comply with the court's order as to the GAL.

that the prior judge[3] "scheduled a child custody evidentiary hearing for Wednesday, February 21 at 10:30 a.m."[4] And, on January 24, 2024, plaintiff filed a second motion to show cause defendant, alleging two parenting-time order violations—one on Christmas Eve 2023 and another on January 7, 2024. In her second motion, plaintiff requested that the court hold defendant in contempt, fine defendant $1,000, send him to jail for 90 days, give plaintiff six makeup days of parenting time, alter the parenting-time schedule, or request local police to enforce the parenting time order.

On March 4, 2024, defendant answered plaintiff's second motion to show cause. Defendant objected to plaintiff filing the motion in propria persona when she was represented by counsel. Defendant denied that he refused to follow the court's order rather it was plaintiff who "withheld or unilaterally changed parenting time" in violation of the court's orders. And, although the parenting-time order spoke for itself, defendant asserted that one of the parties historically spent Christmas Eve with the child and the other had Christmas Day.

Plaintiff's second motion to show cause was heard on March 22, 2024.[5] At the hearing, plaintiff's counsel said: "[W]e had originally set a show cause motion and then the Court brought us in to determine if that would be necessary. And I believe you also ordered the child here as well." Counsel then noted that the hearing pertained to the two parenting-time violations.

Defendant informed the court that he had had sole legal and physical custody since 2018,[6] which plaintiff's counsel disputed. Eventually, the court was provided with the June 2023 referee recommendation and order and it asked to speak to the child in chambers.

After twenty-two minutes, the hearing resumed. The court explained that it had had an opportunity to read the earlier orders and "the most recent finding of the Friend of the Court [(FOC)] entered after a hearing[.]" Further, the court had conducted an in-camera interview with the child. The court added: "So, I'm going to say that, if the parties agree, that I have—there's enough factual information before the Court that we can proceed to argument and let the Court make a decision. And if both parties agree, then, counsel, you may proceed."

Plaintiff's counsel sought "to just clear up [a] couple [of] things and make sure that we're all factually on the same page." Plaintiff's counsel noted that defendant had mistakenly represented that he had "sole physical custody" despite the 2022 order awarding "joint custody."[7]

---

[3] The register of actions shows that this case was reassigned in both January and December 2023.

[4] This suggests that the parties' mediation failed.

[5] The docket entries and register of actions reflect that plaintiff praeciped only the first motion for show cause for hearing on March 8, 2024, and that the parties were returning on March 22, 2024 for a hearing. Yet, plaintiff has failed to provide the transcript from the March 8, 2024 hearing. See MCR 7.210(B)(1)(a). Nevertheless, this Court may consider the issue presented on appeal if it is simply one of law. *Kern v Kern-Koskela*, 320 Mich App 212, 230; 905 NW2d 453 (2017).

[6] The 2018 orders temporarily awarded defendant sole legal and physical custody.

[7] The 2022 order addressed only legal, not physical, custody.

Plaintiff's counsel added that the last FOC report reflected that the GAL recommended joint custody and awarding "the majority of the parenting time to" plaintiff. Counsel provided the FOC report to the court, adding that in subsequent interactions with the GAL, "his opinion may have changed [about] parenting time, but it hasn't changed to custody, to my knowledge." Plaintiff's counsel also candidly informed the court that the GAL had not issued a formal written recommendation.

In response, defendant, who represented himself at the hearing due to his attorney's withdrawal, contended that the GAL's report was "one-sided" because defendant had refused to be interviewed by the GAL, who wanted $1,500 for his services. Defendant told the court that he "was done," advising that he had been through one deposition, one Core Family evaluation, one GAL, two co-parenting classes, two referees, and five mediations. Instead, defendant referred the circuit court to an earlier GAL recommendation that plaintiff had not met the threshold required for moving forward with a custody modification.

Plaintiff's counsel then called plaintiff's mother to testify about defendant's intoxication when he dropped the child off on a prior Christmas Eve. Plaintiff's mother testified that plaintiff and the child had a very loving relationship. Plaintiff's mother wished that the parties got along better, noting that defendant had previously given her "the finger." On cross-examination, plaintiff's mother admitted that she had accompanied plaintiff to the child's school, causing a disturbance. Defendant then alleged that the school visit resulted in plaintiff being arrested for outstanding warrants and the school disenrolling their child the following day.

Defendant testified next, claiming that he was following the 2016 parenting-time order. In fact, defendant always had parenting time on Christmas Eve, consistent with his family's tradition, and plaintiff had the child on Christmas Day. When confronted with the 2021 parenting-time order, defendant opined that his attorney would have addressed that at the evidentiary hearing.[8] Moreover, defendant did not recall refusing to return the child on Christmas Eve. And, as to the failure to comply with the same 2021 parenting-time order on January 7, defendant likewise testified that he did not recall that date and would have to look at his paperwork. Confronted with his own text messages on the dates at issue, defendant did not recall them and testified that plaintiff had kept the child essentially the entire summer. Defendant later testified that plaintiff would take the child, resulting in defendant filing show cause motions and being awarded makeup parenting time by the prior judge.

When shown a videotape of a 2021 Christmas Eve incident involving the police response to plaintiff's call about defendant's alleged intoxication, defendant described it as being orchestrated by plaintiff and involving a rookie officer. Defendant testified that the next day, the police lieutenant personally apologized to him for how the situation unfolded. Defendant also denied that he was intoxicated, opining that the police report content to the contrary was hearsay and unsupported.

---

[8] Defendant maintained that the previously-assigned judge was aware of his family's Christmas Eve family tradition and accommodated it. See footnote 3.

Defendant further testified that plaintiff called the police about him on five separate occasions. Plaintiff had accused defendant of abduction, of abusing her, and of disregarding the court's orders. The last time the police came to defendant's home, the child answered the door and said: "[M]y mom's always calling the police on my dad."

Additionally, defendant informed the court that plaintiff had hired a private investigator to follow him and had had a tracker placed on his vehicle. Plaintiff also contacted Children's Protective Services (CPS) about defendant six times. Defendant referred every CPS investigator to a certain supervisor and no further action was taken against him.[9]

Defendant also testified that plaintiff had her older daughter jailed. Plaintiff grew marijuana in her home and provided "medical marijuana" to her teenage daughter. Defendant purportedly learned this information from the parties' child, who also said that plaintiff said that she was helping her daughter.

Defendant testified that he did not want plaintiff making decisions regarding their child because she had "a history of making bad decisions." For example, plaintiff did not want the child immunized because "the government [was] out to kill people" and "put stuff into" the immunizations. Defendant had the child immunized during his parenting time, resulting in plaintiff filing a show cause motion against him.

Plaintiff was the final witness. She testified that defendant refused to give her the child, even though she had court-ordered parenting time on Christmas Eve 2023 and January 7, 2024. As to Christmas Eve 2023, plaintiff asked the police to conduct a wellness check at defendant's home due to her concern for the child because she had previously witnessed defendant being intoxicated and violent. Plaintiff further testified that defendant had physically assaulted her and the child, including rubbing a hot pepper on the child's face. A teacher also reported that defendant had hit the child. Plaintiff asserted that defendant manipulated the child, offering him a PlayStation 5 if he ran away during plaintiff's parenting time.

Plaintiff had the child "at least 53 percent of the time," during some months in 2023. Plaintiff took the child to the doctor, did his homework with him, and enrolled him in extracurricular activities, which defendant did not do. Plaintiff loved the child and denied that she provided marijuana to her older daughter.

Plaintiff was previously seriously injured in a car accident, suffering physical as well as mental injuries. Thereafter, plaintiff was cleared both medically and psychologically. Plaintiff was "fully fit" and "capable" of making custody decisions.

In closing argument, plaintiff's attorney noted that in 2022, the court determined that plaintiff was fit for joint custody,[10] which the GAL opined was appropriate. Plaintiff's counsel contended that there was no showing of a need to change custody away from plaintiff. And,

---

[9] During his closing argument, defendant disclosed that the supervisor had met with the parties after plaintiff's third CPS complaint and advised plaintiff to stop; however, she did not.

[10] Again, the order addressed only legal, not physical, custody.

considering plaintiff's testimony that defendant was physically violent, it would be unsafe to award defendant full custody of the child when plaintiff was a "fit parent." Turning to the motion to show cause, plaintiff's counsel contended that defendant offered no defense for violating the court's parenting-time order twice.

Defendant, who had raised an older child, argued that he did not want to come to court anymore, did not "want to waste the Court's time anymore," and "want[ed] this to stop."

The circuit court recognized that the June 2023 referee recommendation and order discussed the history of the parties' legal and physical custody and how it was complicated by the maternal grandparents' visitation. The court agreed with the referee that it was imperative for the court to enter a final order regarding custody and parenting time. The court also recognized that the goal of the motion to show cause was to have it sanction defendant for his failure to give the child to plaintiff on two occasions in conformance with its parenting-time order. In the court's view, resolving that issue paled in comparison to addressing the outstanding custody question. The court addressed the custody question based on the testimony presented, the prior FOC reports, and the GAL's recommendation. The court gave little weight to the latest GAL recommendation because defendant provided legitimate reasons for not participating with that process. Moreover, the court determined that plaintiff had made repeated calls to the police to enforce parenting time. Plaintiff had also filed numerous CPS complaints, which were "false and unsupported." The court concluded that "this conflict has been largely the product of inappropriate initiatives . . . [by] plaintiff." Regardless of whether defendant had legal custody, the court awarded him sole legal and physical custody. Further, the court was not ordering any parenting-time provisions because it did not want them "to be the cause of another 10 years of absurdity." The court's ruling was based on defendant's informal promise to foster a relationship between the child and plaintiff, reflecting that the court found defendant's testimony credible. The court also wanted defendant's promise "to be as generous as the circumstances allow in giving the plaintiff parenting time with the child." The court further determined that both parents loved the child, but defendant was in a superior position as to housing. The court added that it did not want "important decisions regarding the child's life to be another reason [for the parties] to come to court." Again, the court expressed its preference to have defendant consult with plaintiff regarding important decisions pertaining to the child. The court's interview with the child also supported its resolution. The child reported that plaintiff had taken away the phone that defendant had given the child to enable the child to communicate with defendant during plaintiff's parenting time. And, although not part of the court's order, the court questioned whether plaintiff's rehabilitation from her accident was "completed," suggesting that her "mental rehabilitation" should be investigated. The court concluded with remarks that the parties' conflict was not good for the child and that it hoped for a future tranquil relationship.

The court entered its order, recognizing that the matter had come before it on plaintiff's "[c]ontempt [m]otion." That motion was denied for the reasons stated on the record. The court further ordered that defendant have "full legal and physical custody of the minor child with all parenting time for [plaintiff] at the discretion of [defendant] given the [defendant's] promise to grant generous parenting time." This appeal followed.

# I. STANDARD OF REVIEW

This Court "review[s] a trial court's findings in a contempt proceeding for clear error, and such findings must be affirmed if there is competent evidence to support them." *In re Kabanuk*, 295 Mich App 252, 256; 813 NW2d 348 (2012). A trial court's finding "is clearly erroneous when no evidence supports the finding or, on the entire record, this Court is left with a definite and firm conviction that a mistake has been made." *King v Mich State Police Dep't*, 303 Mich App 162, 185; 841 NW2d 914 (2013). Further, this Court "may not weigh the evidence or the credibility of the witnesses in determining whether there is competent evidence to support the findings." *In re Kabanuk*, 295 Mich App at 256. And, "[t]his Court reviews a trial court's issuance of an order of contempt for an abuse of discretion." *Id.* "An abuse of discretion occurs when the decision resulted in an outcome falling outside the range of principled outcomes." *Hayford v Hayford*, 279 Mich App 324, 325; 760 NW2d 503 (2008). "Where the trial court misapprehends the law to be applied, an abuse of discretion occurs." *Bynum v ESAB Group*, 467 Mich 280, 283; 651 NW2d 383 (2002). See also *Denton v Dep't of Treasury*, 317 Mich App 303, 314; 894 NW2d 694 (2016) ("An error of law necessarily constitutes an abuse of discretion.").

# II. ANALYSIS

Plaintiff argues on appeal that the trial court erred by modifying the custody order and by failing to consider the best-interest factors under MCL 722.23 of the Child Custody Act before modifying the prior custody orders. We agree.

Plaintiff filed a motion for show cause, seeking to hold defendant in contempt for violating the court's parenting-time order. Statutorily, a court has the authority to punish a party "for disobeying . . . any lawful order . . . of the court." MCL 600.1701(g). Once proven, the court has discretion to punish criminal contempt by a fine of not more than $7,500 or 93 days in jail, or both. MCL 600.1715(1). In this case, the court previously punished parenting-time violations by awarding the non-offending parent makeup time, in line with the remedies available under the Support and Parenting Time Enforcement Act, MCL 552.601 *et. seq*. See MCL 552.641(1)(a) and MCL 552.644(2)(c).

After entering an order of filiation under MCL 722.717b, the circuit court retains continuing jurisdiction to "[p]rovide for, change, and enforce [its] provisions . . . relating to the custody or support of or parenting time with the child." MCL 722.720(b). The Child Custody Act, MCL 722.21 *et. seq.*, distinguishes between legal custody, physical custody, and parenting time. See e.g., MCL 722.26a(7), MCL 722.27, and MCL 722.27a. "Parenting time is the time a child spends with each parent." *Lieberman v Orr*, 319 Mich App 63, 80; 900 NW2d 130 (2017). Unless there is clear and convincing evidence that parenting time would endanger the child's physical, mental, or emotional health, "parenting time shall be granted to a parent in a frequency, duration, and type reasonably calculated to promote a strong relationship between the child and the parent granted parenting time." MCL 722.27a(1) and (3). On the other hand, "[p]hysical custody pertains to where the child shall physically 'reside,' whereas legal custody is understood to mean decision-making authority as to important decisions affecting the child's welfare." *Varran v Granneman (On Remand)*, 312 Mich App 591, 604; 880 NW2d 242 (2015) (quotation marks and citation omitted). When parents have joint legal custody, this means "the parents shall share

decision-making authority as to the important decisions affecting the welfare of the child." MCL 722.26a(7)(b).

Without a finding of proper cause or a change of circumstances, the circuit court is prohibited from revisiting a prior custody determination. *Vodvarka*, 259 Mich App at 508-509. See also MCL 722.27(1)(c). "The purpose of the threshold showing of either proper cause or a change of circumstances is to minimize unwarranted and disruptive changes of custody orders, except under the most compelling circumstances." *Pennington v Pennington*, 329 Mich App 562, 571; 944 NW2d 131 (2019) (quotation marks and citations omitted). "If the party seeking to change custody does not prove by a preponderance of the evidence either proper cause or a change of circumstances, the trial court is not authorized by the Child Custody Act to revisit an existing custody decision and engage in a reconsideration of the statutory best-interest factors." *Id*. at 571. "Proper cause sufficient to revisit a custody order requires the party seeking the custody change to prove by a preponderance of the evidence the existence of an appropriate ground; the ground must be relevant to at least one of the twelve statutory best-interest factors and must be of such magnitude that it has a significant effect on the well-being of the child."[11] *Id*. at 571-572. "To

---

[11] MCL 722.23 provides:

As used in this act, "best interests of the child" means the sum total of the following factors to be considered, evaluated, and determined by the court:

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the

-8-

demonstrate a change of circumstances, the party seeking to change custody must prove that after the entry of the last custody order, the conditions surrounding the child's custody, which have or could have a significant effect on the child's well-being, have materially changed and the change has had, or will almost certainly have, an effect on the child." *Id*. at 572. "This determination is to be made based on the facts of each case that are relevant to the statutory best-interest factors." *Id*. Notably, this Court has recognized "that minor allegations of contempt and complaints regarding visitation are not sufficient to establish proper cause or a change of circumstances sufficient to warrant the trial court revisiting the child custody best-interest factors." *Id*. "However, proper cause may be demonstrated when the parties' disagreements escalate to topics significant to the well-being of the child, such as the child's education or medical treatment." *Id*.

If the circuit court determines that proper cause or a change of circumstances exists, it must then determine whether the child has an established custodial environment with one or both parents. *Kessler v Kessler*, 295 Mich App 54, 61; 811 NW2d 39 (2011). A trial court's failure to determine a child's established custodial environment cannot be harmless because the determination provides the burden of proof regarding the best interests of the child. *Id*. at 62. If the child has an established custodial environment with one or both parents, custody can be changed only if there is clear and convincing evidence that the change is in the child's best interests. *Foskett v Foskett*, 247 Mich App 1, 6; 634 NW2d 363 (2001). If the child has no established custodial environment, custody can be changed if a preponderance of the evidence shows that the change is in the child's best interests. *Id*. at 6-7. The circuit court determines the child's best interests by analyzing the best-interest factors of MCL 722.23.[12] See *Johnson v Johnson*, 329 Mich App 110, 128-129; 940 NW2d 807 (2019) ("Regardless of whether a court is establishing custody in an original matter or altering a prior custody order, the trial court must determine whether the change of custody is in the [child's] best interests and, to that end, must make specific findings of fact regarding each of the 12 statutory best-interest factors.").

MCL 722.28 requires an appellate court to affirm a circuit court's custody order "unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." "When a court incorrectly chooses, interprets, or applies the law, it commits legal error that the appellate court is bound to correct." *Fletcher v Fletcher*, 447 Mich 871, 882; 526 NW2d 889 (1994).

---

purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(*l*) Any other factor considered by the court to be relevant to a particular child custody dispute.

[12] See footnote 11.

In this case, we recognize the circuit court's desire to address the outstanding custody questions arising from plaintiff's 2022 motion to modify custody, the temporary language of the court's 2018 and 2022 orders, and the referee's 2023 recommendation and order. The record below, however, is not clear that the parties agreed to have the court address those custody questions. Instead, the only issue properly noticed for hearing before the court was plaintiff's motion to show cause, asking the court to address defendant's alleged parenting-time order violations. Accordingly, the court legally erred in failing to address plaintiff's motion to show cause under the legal standards applicable to contempt proceedings. *Denton*, 317 Mich App at 314. The circuit court compounded its legal error by imposing a new custody order without complying with the Child Custody Act. See *Pennington*, 329 Mich App at 572; *Johnson*, 329 Mich App at 128-129; *Kessler*, 295 Mich App at 61-62. Therefore, we vacate the circuit court's order and remand for the circuit court to decide plaintiff's motion to show cause based on the evidence presented during the March 22, 2024 hearing.[13]

Vacated and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Christopher P. Yates
/s/ Anica Letica
/s/ Noah P. Hood

---

[13] The circuit court may separately address plaintiff's outstanding September 2022 motion for a change of custody and her March 2023 supplement.

-10-